CUMMINGS, Circuit Judge.
 

 Martin Rabinovitz was twice denied promotions by his employer, the Federal Aviation Administration (“FAA”). After he filed a formal discrimination complaint, Rabino-vitz’s supervisors took several actions that he perceived to be retaliatory. Rabinovitz thus retired after sixteen years of employment and sued the FAA for age and religious discrimination, retaliation, and constructive discharge. We affirm the district court’s grant of summary judgment in favor of the FAA.
 

 I.
 

 Rabinovitz, a Jewish employee of the FAA, worked at its Great Lakes, Illinois, regional office as a real estate contract officer from 1976 until 1992. In 1990 when he was 65
 
 *485
 
 years of age, Rabinovitz applied for a promotion to one of two supervisory positions that had been posted. In November 1990, the positions were given- to two other men— neither was Jewish and both were younger than Rabinovitz (37 and 41 years of age). Several employees had applied for the positions. Each was required to submit various forms and statements to be reviewed by a merit promotion panel, which consisted of three individuals: Janice Duckworth (designated as the technically knowledgeable participant), Barbara Dettmer (designated to ensure that no prohibited discrimination occurred), and Gloria Ostrand (personnel specialist). Dettmer was from the agency’s Public Affairs department rather than its Civil Rights department and had no previous experience with promotion panels.
 

 The panel identified Rabinovitz and four other individuals as “qualified” for the position. He received 21 out of 30 points on the panel’s evaluation, placing him last on the list of five candidates. The two men hired, Robert Sipek and Donald Russo, scored 30 and 25 points respectively. Duckworth and Ost-rand testified that the panel did not discuss the age or religion of the candidates. After the panel’s evaluation, the candidates were interviewed by Glen Timmerman, a section supervisor, and Robert Pouei, Rabinovitz’s immediate supervisor. Timmerman testified that he and Pouei considered Rabinovitz the weakest candidate after the interviews.
 

 Sandra Libby, Pouci’s superior and the selecting official, made the final hiring decision from among the five candidates. She selected Sipek and Russo based on information from the panel, the two interviewers, the required forms and statements, as well as her own observations. She also consulted with other individuals who all concurred in her decision. Libby was first acquainted with Rabinovitz in September 1990. In an October 1990 conversation, he volunteered to Libby that he was Jewish. She did not know the religion of the other four candidates when she made her final selections on November 18, 1990. She testified that she considered “the big picture” in making the decision, which to her meant all of the available information from the panel, etc. To Rabino-vitz, it meant that “an old Jew like myself just did not fit in.” She testified further that she did not hire Rabinovitz because his score from the panel was the lowest and because Timmerman’s interview notes showed weaknesses in supervisory experience and human relations. After announcing the selections, Libby offered to send Rabinovitz to a management training course, but he declined.
 

 Rabinovitz claims that he was more qualified than the two men selected. Sipek had spent the previous year in materials management, and thus lacked experience in real estate matters. Some co-workers also testified that Rabinovitz was more qualified than Russo. As to his own qualifications, Rabino-vitz claims he had the necessary technical and supervisory experience. He points out that he had supervised individuals for years.
 

 Rabinovitz subsequently sought counseling with the Equal Employment Opportunity Commission (“EEOC”) and filed a formal complaint on December 10, 1990, alleging that he had been discriminated against because of his age and religion. In November 1990, while Rabinovitz was engaged in EEOC counseling, his employer announced a vacancy for a Realty Officer. The Realty Officer would supervise the two realty specialists just hired — Sipek and Russo-as well as six other realty specialists and a secretary. Rabinovitz, now 66 years of age, and ten others applied for the position and were found “qualified” by the promotion panel, which included Duckworth. Duckworth testified that Rabinovitz’s age and religion did not affect the panel’s rating.
 

 In February 1991, the eleven candidates were interviewed by Neil Johnson, an engineer, and Michael Landon, a branch manager. Libby, who was the selecting officer, submitted questions to the interviewers and observed the interviews. One question asked of each candidate was what their reaction would be if not selected for the position. Libby contended that the question was designed to test the candidates’ maturity. Libby ultimately selected Darrel Shepack for the position; Shepack was not Jewish and was 51 years of age. She selected him because of his diversified background and his management skills. She said that Rabinovitz did not
 
 *486
 
 possess the skills of a supervisor or manager and that she did not consider his age or religion.
 

 In April 1991, Russo, who was now supervisor, gave Rabinovitz his yearly appraisal. Rabinovitz received a rating of “fully successful,” which was one level below the “exceptional” rating that he had consistently received in the past. As a result, he lost a $600 bonus. Russo testified that the ranking reflected Rabinovitz’s lack of computer skills and that he only had access to one of Rabino-vitz’s prior evaluations at the time. Rabino-vitz cites a number of examples of his exceptional performance all to the effect that his actual performance level had not changed from previous years. Also in April, Russo informed Rabinovitz of various office restrictions: he was only allowed to talk to others about business matters; he was required to report to Russo before leaving the office and upon returning; he was to limit his breaks to twenty minutes; and he was not allowed to use the secretary for typing. The other real estate contract officers were not told of these restrictions. In addition, Rabinovitz requested and was denied the opportunity to begin work at 6 a.m. under a flex-time policy. Two other employees were allowed to start that early, but no real estate contract officers. Shepack testified that the FAA regional administrator ordered the office to provide technical support until 4:30 p.m. and the office only had four level-12 realty specialists, including Rabinovitz.
 

 When an EEOC investigator arrived to investigate Rabinovitz’s discrimination claim, Russo and Shepack sent him out of town, allegedly because the trip involved his area of responsibility as a member of an evaluation team. Rabinovitz denies that the trip related to his area of specialty and generally argues that the restrictions and hostility continued during 1992. In August 1992, Rabino-vitz complained to Shepack about what he perceived to be unfair treatment. Rabinovitz contends that Shepack told him to resign if he did not like it, but Shepack denies making such a statement. On October 31, 1992, Ra-binovitz resigned from the FAA.
 

 Final adverse action was taken on Rabino-vitz’s EEOC claims in December 1993, and in March 1994 he filed a complaint in district court. He alleged discrimination based on religion and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(l), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) (“ADEA”). He also alleged retaliation and constructive discharge in violation of 42 U.S.C. § 2000e-3(a) after he filed the EEOC complaints. In November 1995, the district court entered summary judgment against plaintiff on all counts,
 
 Rabinovitz v. Pena,
 
 905 F.Supp. 522 (N.D.Ill.1995), and this appeal followed.
 

 II.
 

 We review summary judgment
 
 de novo,
 
 with all evidence submitted and the legitimate inferences to be drawn therefrom viewed in the light most favorable to plaintiff.
 
 East Food & Liquor, Inc. v. United States, 50 F.3d
 
 1405, 1410 (7th Cir.1995).
 

 A. Discrimination
 

 Under the ADEA and Title VII, a plaintiff may prove discrimination in either of two ways.
 
 Anderson v. Baxter Healthcare Corp.,
 
 13 F.3d 1120, 1122 (7th Cir.1994). He may present direct evidence
 
 of
 
 discrimination or apply the burden-shifting framework from
 
 McDonnell Douglas Corp. v. Green,
 
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Rabinovitz has provided no direct evidence of discrimination and we therefore proceed to the
 
 McDonnell Douglas
 
 analysis under which he must first make out a prima facie case of discrimination. The elements of the prima facie case for age and religious discrimination in a failure-to-promote case such as this are as follows: plaintiff must show that (1) he was a member of the protected class (under the ADEA, age 40 or over); (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) someone younger than he was given the position (age discrimination) or someone of a different religion was given the position (religious discrimination).
 
 Sample v. Aldi, Inc.,
 
 61 F.3d 544, 548 (7th Cir.1995);
 
 Roper v. Peabody Coal Co.,
 
 47 F.3d 925, 926-927 (7th Cir.1995). The parties agree that Rabinovitz
 
 *487
 
 established a prima facie case under both the ADEA and Title VIL
 

 Once established, the prima facie case creates a rebuttable presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, nondiseriminatory reason for failing to promote the plaintiff.
 
 Gadsby v. Norwalk Furniture Corp.,
 
 71 F.3d 1324, 1330 (7th Cir.1995);
 
 Sample,
 
 61 F.3d at 548. Rabinovitz does not dispute that the defendant met its burden. The FAA offered evidence to support its assertion that it failed to promote Rabinovitz because he lacked the necessary supervisory and managerial skills. We thus reach the final stage of the
 
 McDonnell Douglas
 
 analysis and the central dispute in this case: whether Rabinovitz demonstrated that the FAA’s articulated reasons are a pretext for discrimination.
 
 Gadsby,
 
 71 F.3d at 1330-1331. “A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer’s proffered explanation is unworthy of credence.”
 
 Rand v. CF Indus., Inc.,
 
 42 F.3d 1139, 1145 (7th Cir.1994). We conclude that Rabinovitz has shown neither.
 

 To refute the FAA’s proffered nondiscriminatory reasons, Rabinovitz submitted affidavits from his three fellow contract realty officers. Each attested to Rabinovitz’s strong abilities and stated that he was more qualified than Sipek for the supervisory realty position. The affidavits are not sufficient to show that the FAA’s explanation is unworthy of credence. The affidavits do not allege specific facts to support the necessary inference that Sipek was so much less qualified than Rabinovitz that only discrimination could have prevented Rabinovitz from receiving the promotion. The affidavits also do not contain facts that shed any light on what Libby, who made the ultimate decision, knew or did not know regarding the events alleged in the affidavits that formed the basis of the perceived differences between Sipek and Rabinovitz. This Court has previously stated that isolated comments by co-workers regarding a plaintiffs abilities do not demonstrate that he is a stronger performer than other candidates.
 
 Sirvidas v. Commonwealth Edison Co.,
 
 60 F.3d 375, 378 (7th Cir.1995) (citing
 
 Anderson v. Stauffer Chem. Co.,
 
 965 F.2d 397, 403 (7th Cir.1992)). Neither do Rabinovitz’s own opinions about his performance or qualifications give rise to a material factual dispute.
 
 Johnson v. University of Wisconsin-Eau Claire,
 
 70 F.3d 469, 481 (7th Cir.1995).
 

 Rabinovitz cites
 
 Collier v. Budd Co.,
 
 66 F.3d 886 (7th Cir.1995), for the proposition that because the affidavits placed his qualifications directly at issue with the employer’s characterization of him, summary judgment was inappropriate. The evidence in
 
 Collier,
 
 however, was much stronger. There the plaintiff in his own deposition detailed specific training that he had and overall sales figures-objective criteria that is much more probative than the subjective statements made by Rabinovitz’s colleagues. More important, the statements in
 
 Collier
 
 spoke directly to the comparative differences between the plaintiff and the employee who was not fired.
 
 Id.
 
 at 892. In the present case, we know that Rabinovitz was qualified for the positions: the promotion panels deemed him to be so. But the record lacks sufficient support for the proposition that Rabinovitz was so much more qualified than the other candidates that discrimination likely entered the decisionmaking process. The best evidence Rabinovitz has on this front is the fact that Sipek’s immediate prior position was in materials management, not real estate. That is not enough. The facts indicate that the promotion panel and Libby took many factors into account, including general managerial and supervisory skills. To credit Rabi-novitz’s weak evidence, we would have to act as a “super-personnel department that reexamines an entity’s business decisions,” a role this Court has frequently rejected. See,
 
 e.g., McCoy v. WGN Continental Broadcasting Co.,
 
 957 F.2d 368, 373 (7th Cir.1992).
 

 Rabinovitz further argues that the promotion panels’ and Libby’s knowledge that he is Jewish is strong evidence of pretext. The panel members testified that religion and age did not enter their decision, but they apparently knew that Rabinovitz was a member of the Jewish War Veterans’ Association. Libby told an EEOC investigator that she did not know plaintiff was Jewish, until
 
 *488
 
 after he filed an EEOC complaint in 1990; however, in a later deposition she stated that Rabinovitz had mentioned his religion to her in an October 1990 conversation — after applying for the first promotion but before Libby rejected him. Proof that an employer did not know of a plaintiff’s membership in a protected class would likely preclude any assertion of pretext. That scenario is not present here, for the record shows that the decision-makers knew Rabinovitz was Jewish. The converse, however, is not true. An employer’s knowledge that the plaintiff is a member of a protected class is obviously not enough to cast doubt on that employer’s proffered reason for rejecting a candidate; otherwise, plaintiffs alleging gender and racial discrimination, for example, would always clear the pretext hurdle-assuming their gender and race are conspicuous. Rabinovitz’s strongest evidence is that Libby lied about not knowing his religion when she first testified. In the context of this case, however, her false statement to the EEOC investigator is not evidence of pretext. Libby may have later recalled the conversation with Ra-binovitz in the
 
 more
 
 searching atmosphere of a deposition; regardless, he fails to make the necessary connection in the evidence between her (alleged) desire to he to the EEOC investigator and her decision to reject Rabi-novitz for the promotion. As we have said, the mere fact that she knew he was Jewish is not enough.
 

 Rabinovitz’s remaining evidence is equally unpersuasive. He points to the fact that Libby said she considered “the big picture” in making her decision. Because the office environment was “remarkably free of older people and Jews,” Rabinovitz makes the insupportable assumption that by “picture” Libby meant the racial and age composition of the office. A more reasonable assumption is that Libby was referring to the information collected during the selection process, and her testimony substantiates that assumption. Further, one of Rabinovitz’s co-workers stated in his affidavit that Rabinovitz was not promoted because the FAA wanted “a younger crop of individuals.” No facts other than the individual’s opinion were offered. Rabi-novitz asserted that nine people ages 41 and under had been promoted, but he failed to offer evidence as to who had made the promotions or other evidence that would somehow connect those promotions with the two at issue in this case. The other events on which Rabinovitz relies are even less creditable and therefore do not warrant discussion.
 

 B. Retaliation
 

 Rabinovitz next claims that the FAA retaliated against him for filing EEOC complaints in December 1990 and May 1991. A prima facie case of retaliation is made when the plaintiff shows that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse action.
 
 Brenner v. Brown,
 
 36 F.3d 18, 19 (7th Cir.1994). Rabinovitz clearly engaged in protected expression by filing the EEOC complaints. Thus only the last two elements of the prima facie case are at issue.
 

 Rabinovitz alleges two adverse employment actions to satisfy the second prong of the prima facie test: his lower performance rating and the workplace restrictions, both occurring in April 1991. The alleged adverse employment actions, however, must be material:
 

 [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indi-ces that might be unique to a particular situation.
 

 Crady v. Liberty Nat’l Bank & Trust Co.,
 
 993 F.2d 132, 136 (7th Cir.1993). Neither action alleged by Rabinovitz amounts to a material adverse change. The lower performance rating did not alter his responsibilities or salary. At most, it prevented him from receiving a $600 bonus. We agree with the district court, however, that loss of a bonus is not an adverse employment action in a case such as this where the employee is not auto
 
 *489
 
 matically entitled to the bonus. Further,
 
 Holland v. Jefferson Nat’l Life Ins. Co.,
 
 883 F.2d 1307 (7th Cir.1989), cited by Rabinovitz, does not stand for the proposition that a low performance rating is always an adverse employment action. In
 
 Holland,
 
 the quantum of adverse actions, which included a low performance rating, made a prima facie case of retaliation.
 
 Id.
 
 at 1314-1315. Rabinovitz’s performance rating was lowered only one level to “fully successful,” and the uneontra-dieted evidence indicates that his supervisor did not know that plaintiff had consistently received the “exceptional” rating in previous years.
 

 The restrictions imposed on Rabinovitz also do not amount to adverse employment actions. None of the restrictions related to plaintiffs job responsibilities or job title, and all appear rationally related to the explanation given for their imposition. Russo testified that Rabinovitz’s whereabouts were unknown for long periods of time and that he spent time talking with other employees about not being promoted. Other employees were not restricted in the same manner because Russo did not perceive a problem with anyone other than Rabinovitz. The supervisors also gave reasonable explanations for not permitting him to start work early and for sending him out of town when the EEOC investigator visited the FAA. The restrictions are not unreasonable in light of these explanations; at most, they were mere inconveniences that do not make a prima facie ease of retaliation.
 

 Because we hold that Rabinovitz failed to meet the second element of the prima facie test, we need not reach the third element— the causal link — save the following comment. The district court held that no causal link existed, but this Court has previously stated that a temporal connection between the employee’s protected action and the employer’s adverse action, such as existed in this case, is generally enough to satisfy the third element of the prima facie test. See,
 
 e.g., Holland,
 
 883 F.2d at 1315 (citing additional authority).
 

 C. Constructive Discharge
 

 Rabinovitz claims that his October 1992 resignation from the FAA amounted to a constructive discharge. To state a claim for constructive discharge, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign.
 
 Chambers v. American Trans Air, Inc.,
 
 17 F.3d 998, 1005 (7th Cir.1994), certiorari denied, — U.S. -, 115 S.Ct. 512, 130 L.Ed.2d 419;
 
 Saxton v. American Tel. & Tel. Co.,
 
 10 F.3d 526, 536-537 (7th Cir.1993). The working conditions must be more than merely intolerable; they must be intolerable in a discriminatory way.
 
 Chambers,
 
 17 F.3d at 1005-1006. We have also noted that an employee may not be unreasonably sensitive to his working environment and that he must seek redress while remaining in his job unless confronted with an aggravating situation beyond ordinary discrimination.
 
 Brooms v. Regal Tube Co.,
 
 881 F.2d 412, 423 (7th Cir.1989).
 

 Rabinovitz’s allegations fail to meet the standard for constructive discharge. He states generally that he was subjected to constant mean, humiliating insults, but only alleges the following specific incidents: the lowered performance rating in April 1991, the workplace restrictions of April 1991, the refusal of his request to start work at 6 a.m., his business trip that coincided with the arrival of the EEOC investigator, and the comment allegedly made by Shepaek to the effect that plaintiff could quit if he was not happy with the job. At most, these incidents suggest that friction existed between Rabinovitz and his supervisors, not that his job was so intolerable that he was forced to resign. Rabinovitz’s performance rating was entirely satisfactory, only having been lowered one level from “exceptional” to “fully successful.” As to the workplace restrictions, not only do they not appear to be based on a discriminatory motive, but Rabinovitz endured them for a year and a half before resigning. The suspiciously timed business trip and the refusal of his request to start work early were both actions that appeared to be based on legitimate, nondiscriminatory motives. As to the comment allegedly made by Shepaek (he denies having ever made the comment), only an unreasonably sensitive employee would feel compelled to resign after hearing such a
 
 *490
 
 remark. Even taken together, these events would not have compelled a reasonable employee to resign. The district court therefore properly entered summary judgment on the constructive discharge claim.
 

 III.
 

 For the foregoing reasons, we affirm the district court’s grant of summary judgment against Rabinovitz.