108 F.3d 1379
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert McCOY, Plaintiff-Appellant,
v.
OSCAR MAYER FOODS,[1] Defendant-Appellee.
 No. 96-1328.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 5, 1997.*
Decided March 6, 1997.
 
 Before BAUER, COFFEY and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 In 1992 Robert McCoy sued his former employer, Oscar Mayer Foods, alleging racial discrimination in violation of Title VII, 42 U.S.C. §§ 2000e to 2000e-17. McCoy, who is African-American, claims that Oscar Mayer discriminatorily failed to promote him and, through that and other hostile acts, constructively forced his resignation. The district court granted summary judgment to the defendant on both claims, and McCoy appeals. We affirm in part and reverse and remand in part.
 
 
 2
 We review a grant of summary judgment de novo, taking the facts and resulting reasonable inferences in the light most favorable to the nonmovant. Miranda v. Wisconsin Power & Light Co., 91 F.3d 1011, 1014 (7th Cir.1996). McCoy, who has an MBA in finance, was hired by Oscar Mayer in February 1988 and worked from December of that year until his resignation in 1990 as a "Cost Administrator I." He completed an Oscar Mayer pre-management training program, which included at least some exposure to personnel matters, and participated in several recruitment trips to various schools. Several other tasks incidental to his position as Cost Administrator also gave him some informal experience with personnel issues.
 
 
 3
 In late 1989 or early 1990, McCoy indicated he was interested in an open position as Senior Cost Accounting Analyst Supervisor, but was told that the position had already been filled. In February 1990 McCoy sent a memorandum to several Oscar Mayer executives stating his interest in a human resources position; he also met with the human resources manager, Lou Albrecht. When an Assistant Personnel Manager position opened up, McCoy indicated his interest to Albrecht, who promised to notify McCoy when interviews were scheduled. McCoy says he was never interviewed, and that the job was ultimately given to Jim Hyne, who had been a trainee in the human resources department for three months. On June 11, 1990, when Hyne's appointment was announced, McCoy tendered his resignation effective June 22, citing a lack of promotional opportunities at Oscar Mayer. Hyne's promotion subsequently took effect on July 2.
 
 
 4
 Title VII establishes that it is unlawful for an employer to discriminate on the basis of race in making employment decisions or in providing employment opportunities. 42 U.S.C. § 2000e-2(a). In constructing equitable relief under Title VII, the court's goal is " 'to make the victims of unlawful discrimination whole' by restoring them, 'so far as possible ... to a position where they would have been were it not for the unlawful discrimination.' " Ford Motor Co. v. EEOC, 458 U.S. 219, 230 (1982) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)). In its pre-1991 form, the statute authorized only equitable remedies, typified by ordering the offending employer to reinstate or hire the victim with or without back pay. See 42 U.S.C. § 2000e-5(g)(1). The back pay remedy is explicitly limited by a duty to mitigate and is reducible by the plaintiff's interim earnings, or by the amount the plaintiff would have earned with "reasonable diligence." Id. In 1991 Congress added compensatory and punitive damage remedies; these amendments were not retroactive and do not benefit McCoy because he complains solely of pre-1991 conduct. See Landgraf v. USI Film Prods., 511 U.S. 244 (1994); Dombeck v. Milwaukee Valve Co., 40 F.3d 230, 232 (7th Cir.1994).
 
 
 5
 We first consider McCoy's claim of constructive discharge.[2] The standard is demanding: "To state a claim for constructive discharge, a plaintiff needs to show that his [discriminatory] working conditions were so intolerable that a reasonable person would have been compelled to resign." Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir.1996). Generally, "an employee ... must seek redress while remaining in his job unless confronted with an aggravating situation beyond ordinary discrimination." Id. For a resignation to be termed a constructive discharge, it is not enough that the employer's discrimination contributed to the separation; it must compel it.
 
 
 6
 "The constructive discharge doctrine is a judicially-created response to the fact that Title VII, as originally enacted, afforded no damages remedy to a harassment victim for emotional trauma or even for medical expenses she may have incurred. Thus, courts have said that where conditions are so intolerable that a reasonable person would feel compelled to resign, a plaintiff may do that, and then sue for reinstatement and back pay." Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir.1994); see also Brooms v. Regal Tube Co., 881 F.2d 412, 423 (7th Cir.1989). If these objective standards are met, the Title VII plaintiff can quit and yet sue as if fired. On the other hand, if discrimination is proven but its severity falls short of constructive discharge, not even nominal damages will be available under the pre-1991 Title VII. Swanson v. Elmhurst Chrysler Plymouth, Inc., 882 F.2d 1235, 1240 (7th Cir.1989); Bohen v. City of East Chicago, 799 F.2d 1180, 1184 (7th Cir.1986).
 
 
 7
 We agree with the district court that McCoy was not constructively discharged. The conditions McCoy describes, such as criticism of his job performance that he felt was unwarranted, appear to have been unpleasant or unfair but can not rationally be termed intolerable. The denial of the Senior Cost Accounting Analyst Supervisor position does not support his claim because, as the district court found, McCoy could not even make out a prima facie case for discrimination where he would have had to skip through several position grades to take the position. The appointment of Jim Hyne to Assistant Human Resources Manager is a closer question, as described below, but even if discriminatory does not constitute the kind of intolerable treatment that would compel a reasonable person to resign. McCoy had only recently expressed an interest in promotional opportunities and could not reasonably have felt forced to leave by this disappointment. McCoy's remaining assertions of discrimination, none of which directly suggest racism, cumulatively amount to nuisances and not intolerable conditions.
 
 
 8
 With regard to McCoy's failure to promote claim, the district court initially denied summary judgment, concluding that if McCoy were to establish that Oscar Mayer had denied him the promotion on discriminatory grounds, he would be entitled to back pay limited to the difference in pay between the two positions for the period between the denial and his resignation. After receiving additional submissions from the parties, the court decided that McCoy could show no damages at all because "the promotion, even if McCoy had received it, would not have taken effect until after he departed." (Jan. 12, 1996 Order at 2.)
 
 
 9
 Underlying the district court's logic is the unstated assumption that McCoy would have left Oscar Mayer no matter what. This would be a fair assumption if, for example, McCoy had resigned before hearing about the promotion. The promotion would then have been of no use to him. But McCoy asserts that he resigned in part because of the denied promotion, which is consistent with the chronology noted by the district court: "[McCoy] tendered his resignation on the very date that he learned he would not receive the promotion." (Id.) In fact, there is no indication that the parties dispute that McCoy would have accepted the promotion had it been offered to him, so the district court's assumption appears unsound.
 
 
 10
 Similarly, the district court's belief that liability for a wrongfully denied promotion would terminate upon the employee's voluntary resignation is not necessarily true. Assuming that if McCoy had received the promotion he would have stayed with the company, back pay for the period after his resignation is at least conceivable. To make the victim whole, an equitable remedy must reconstruct the victim's employment status as best as possible to the way it would have been absent discrimination, which may require ordering the employer to reinstate or hire the victim into the wrongfully denied position--as would be obvious if this were a simple refusal to hire case. On the other hand, the victim is burdened with a duty to mitigate, making a voluntary resignation risky and likely diminishing or even eliminating the back pay entitlement.[3]
 
 
 11
 We do not express any view as to the ultimate merit of McCoy's failure to promote claim; we merely find that his voluntary resignation does not entitle Oscar Mayer to summary judgment on the theory that the promotion could not have benefited him. The district court's grant of summary judgment on McCoy's claim of constructive discharge is AFFIRMED; its grant of summary judgment with regard to the failure to promote claim is REVERSED, and the claim is REMANDED for further proceedings consistent with the views expressed herein.
 
 
 
 [1]
 Oscar Mayer indicates in its brief that in December 1995 the original defendant in this action, Oscar Mayer Foods Corporation, became a division of Kraft Foods, Inc., which is its successor in interest. For consistency, we will refer to the appellee herein as "Oscar Mayer."
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [2]
 McCoy complains that the district court should have compelled Oscar Mayer to produce additional discovery, such as statistical information concerning current and former employees. Our review of a denial of discovery is for abuse of discretion, Gile v. United Airlines, Inc., 95 F.3d 492, 495 (7th Cir.1996). We are unpersuaded that any abuse occurred here given the tenuous relevance of the requested data and the burdensome nature of the requests
 
 
 [3]
 Some courts have interpreted the duty to mitigate to hold that a voluntary quit conclusively terminates the right to additional damages, reasoning that public policy favors requiring employees to combat discrimination such as unequal pay or denial of promotion within the context of the employment relationship unless and until conditions become intolerable. Jurgens v. EEOC, 903 F.2d 386, 389 (5th Cir.1990); Bourque v. Powell Elec. Mfg. Co., 617 F.2d 61, 65-66 (5th Cir.1980); see also Derr v. Gulf Oil Corp., 796 F.2d 340, 342-43 (10th Cir.1986). The Ninth Circuit has attempted to apply this rule while alleviating some of its harsh consequences by permitting an exception where the employee is denied a position so dissimilar to the prior position that the denial may be characterized as a refusal to hire. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1495 (9th Cir.1995); Thorne v. City of El Segundo, 802 F.2d 1131, 1133-34 (9th Cir.1986); see generally Ezold v. Wolf, Block, Schorr and Solis-Cohen, 758 F.Supp. 303 (E.D.Pa.1991), rev'd on other grounds, 983 F.2d 509 (3rd Cir.1992). No decision in this circuit appears to have adopted this interpretation of the duty to mitigate, and the appellee has not argued for it