129 F.3d 1268
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Steve RICHARDSON, Plaintiff-Appellant,
v.
TURTLE WAX INCORPORATED, Defendant-Appellee.
 No. 97-1263.
 United States Court of Appeals, Seventh Circuit.
 Oct. 28, 1997.*
 
 1
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
 
 Hon. Richard A. Posner, Chief Judge
 Hon. William J. Bauer, Chief Judge
 Hon. Terence T. Evans, Circuit Judge
 ORDER
 ZAGEL
 
 2
 Steve Richardson, an African-American male, sued Turtle Wax for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.SC. § 2000e et seq. The district court granted Turtle Wax's motion for summary judgment, stating that Richardson failed to establish a prima facie case of racial discrimination and did not show that Turtle Wax's articulated legitimate nondiscriminatory reason for terminating Richardson was pretextual. Richardson appealed the decision of the district court claiming that he was treated differently than a similarly-situated Caucasian employee. We affirm.
 
 
 3
 Richardson had worked as a fork lift operator for Turtle Wax for over five years, during which time he accumulated numerous warnings and suspensions under Turtle Wax's Attendance, Tardiness, Leave Early (ATL) policy. Under the ATL policy, anyone who has an unreported, unexcused absence will be assessed three points. Turtle Wax terminates any employee who accumulates nineteen points. On April 20, 1993, Richardson did not report to work and did not call Turtle Wax. Therefore, Richardson was assessed three points for his unreported, unexcused absence. When added to the points he had previously accumulated for absences and tardies, it brought his total to nineteen and a half points. On April 26, 1993, Richardson reported to work with a physician's note dated April 23, 1993. This note did not reference the April 20, 1993 absence. On April 26, Turtle Wax terminated him for accumulating nineteen points under the ATL policy.
 
 
 4
 Richardson subsequently submitted to Turtle Wax a second doctor's note dated May 4, 1993, which stated that Richardson was under doctor's care on April 20, 1993. On May 9, 1993, after verifying the physician's note, Turtle Wax called Richardson to advise him to report to work on May 10, 1993. On May 10, 1993, Richardson reported to work and was given written notice stating that he was reinstated with no loss of rights, privileges, or seniority; that his ATL record would be adjusted to reflect a penalty of two, rather than three, points for the April 20, 1993, unreported, excused absence; and that his total accumulated points would be reduced to eighteen and a half Richardson was also informed there would be no back pay for the period April 26, 1993 to May 10, 1993. On May 11, 1993 Richardson resigned.
 
 
 5
 These facts are uncontested. The basis of Richardson's complaint is that he was treated differently than Thomas McCarthy, a similarly-situated Caucasian employee of Turtle Wax. On January 24, 1992, McCarthy was absent, but called to inform Turtle Wax he would be unable to report to work. McCarthy was allowed to return to work on January 27, 1992, without producing a physician's note until the following day. After returning to work, McCarthy submitted a doctor's note excusing him from work on January 24, 1992 and January 27-28, 1992. Consequently, McCarthy was assessed one point for his reported, excused absence, which brought his total under the ATL policy to eighteen and a half points. On February 26, 1992, McCarthy had a reported, unexcused absence for which two points were assessed, bringing his total under the ATL policy to twenty and a half points. On February 27, 1992, Turtle Wax terminated McCarthy for accumulating more than nineteen points under the ATL program. The district court, attributing the difference in treatment to the fact that McCarthy reported his absence while Richardson did not, granted Turtle Wax's summary judgement motion because Richardson failed to establish a prima facie case of discrimination.
 
 
 6
 We review the district court's granting of summary judgement de novo, viewing all evidence and reasonable inferences in the light most favorable to the plaintiff. See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 346 (7th Cir.1997). Additionally, since Richardson is proceeding pro se we must construe his complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In order to establish a prima facie case of racial discrimination under Title VII of the Civil Rights Act of 1964, Richardson must show that (1) he is a member of a protected group, (2) he was performing up to his employer's legitimate standards, (3) that he was discharged, and (4) that other similarly-situated employees outside his race were treated more favorably. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Cowan v. Glenbrook Security Services, Inc., 123 F.3d 438, No. 96-3897, 1997 WL 409404, at * 6 (7th Cir. July 23, 1997).
 
 
 7
 Richardson is African-American and therefore a member of a protected group. Additionally, since he was employed for over five years, we can assume, for the purposes of this appeal, that he was performing up to his employer's legitimate standards. Richardson meets the first two prongs of the McDonnell Douglas test.
 
 
 8
 However, he fails to establish the third prong--that he was discharged. Richardson claims that his resignation from Turtle Wax amounted to constructive discharge. "To state a claim for constructive discharge, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign." Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir.1996). Richardson must show that his working conditions were more than merely intolerable; the conditions must have been intolerable in a discriminatory way. See Rabinovitz, 89 F.3d at 489; Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005 (7th Cir.1994). Additionally, an employee must seek redress while remaining in his job unless confronted with an aggravating situation beyond ordinary discrimination. See Rabinovitz, 89 F.3d at 489.
 
 
 9
 The intolerable conditions which underlay Richardson's claim are his reinstatement with just a half point until termination and the fact that he was reinstated without back-pay. Even though Richardson was only a half point away from termination, the ATL policy subtracts three points from an employee's total if that employee is not absent, tardy, or does not leave early for sixty days. All Richardson was required to do, something he had done at least eighteen times in the past, was comply with company policy for sixty days. Contrary to Richardson's assertion that the work environment had become a "hassle," being forced to comply with company policy for sixty days does not constitute an intolerable working condition. See id. (employee must not be unreasonably sensitive to work environment) Nor is the failure to assign back pay to Richardson an intolerable working condition. See Chambers, 17 F.3d at 1005 (failure to authorize pay raise is not an intolerable working condition). Richardson did not bring Turtle Wax a doctor's note for his April 20th absence until early May. Even if the failure to give back-pay was an intolerable working condition, Richardson was not confronted with an aggravating situation beyond ordinary discrimination and should have remained on the job. Instead, Richardson resigned on May 11, 1993. Richardson does not establish he was constructively discharged and, therefore, his claim fails to establish a prima facie case
 
 
 10
 We add that Richardson also does not establish a prima facie case under the fourth prong of the test--that he was treated less favorably than other similarly situated non African-American employees. Richardson claims that McCarthy was allowed to submit a physician's note after his absence and thereby lower the number of points assessed and avoid termination. However, Richardson was also permitted to lower his total number of points and avoid termination. Upon receiving a physician's note, two weeks after the unreported absence, Turtle Wax adjusted Richardson's ATL point total to reflect his now unreported, excused absence and thereby avoid termination.
 
 
 11
 Even assuming McCarthy had been allowed to return to work on January 27, 1992 without a physician's note, Richardson does not establish a prima facie case. McCarthy informed Turtle Wax ahead of time that he would be unable to report to work on the 24th. By contrast, not only did Richardson fail to inform Turtle Wax that he would not report to work, but when he did show up the following scheduled work day, he brought a physician's note which did not excuse him for the day in question. Both McCarthy and Richardson were assessed points for excused absences in standard practice with the ATL policy. The difference in point totals resulted from Richardson's failure to report his absence, not racial discrimination. Richardson fails to assert any meaningful difference in treatment between him and McCarthy.
 
 
 12
 Finally, Richardson's additional claims are raised for the first time on appeal. As such, they are waived and need not be considered. See, e.g., McKinney v. Indiana Michigan Power Co., 113 F3d 770, 773 (7th Cir.1997) (arguments raised for the first time on appeal are waived); Edward E. Gillen Co. v. City of Lake Forest, 3 F.3d 192, 196 (7th Cir.1993) ("Having forsaken the opportunity to articulate that argument ... [Richardson] waived it ...")
 
 
 13
 Since Robinson does not establish a prima facie case of racial discrimination, it is unnecessary to apply the remainder of the burden-shifting analysis of McDonnell Douglas.
 
 
 14
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)