Billy WILLIAMS, Plaintiff,

v.

**PENSKE TRANSPORTATION SERVICES, INC.,**
Defendant.

No. 97–2470–JWL.

United States District Court,
D. Kansas.

March 1, 1999.

Charles S. Scott, Jr., Shawnee, KS, for plaintiff.

Leonard Singer, Paula E. Hosler, Bioff, Singer & Finucane, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Billy Williams filed suit against defendant Penske Transportation Services, Inc. alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. This matter is presently before the court on defendant's motion for summary judgment (doc. # 36). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.[1]

## I. Facts[2]

Defendant Penske Transportation Services, Inc. is a corporation engaged in the business of supply chain management, or the management of in-bound, out-bound material flow services. Plaintiff began his employment with defendant in May 1995 as a first-shift warehouse worker.[3] Shortly thereafter, plaintiff elected to move to the third-shift and began working as a third-shift warehouse worker. Although plaintiff was employed by defendant in May 1995 and June 1995, he admits that he represented to the State of Kansas that he was unemployed during this period. As a result of these misrepresentations, plaintiff unlawfully collected approximately one thousand dollars in unemployment benefits.

In January 1996, defendant received a letter from the Kansas Department of Human Resources (KDHR) requesting verification of wage information with respect to plaintiff. In early February, defendant provided the requested information to the KDHR. On March 11, 1996, an examiner for the KDHR issued a Notice of Determination in which the examiner concluded that plaintiff "substantially underreported his earnings, causing him to receive more [unemployment] benefits than he otherwise would have" and that plaintiff "intentionally made false statements to obtain [unemployment] benefits not due." Although the Notice of Determination indicated that a copy of the Notice was mailed to defendant on March 11, 1996, defendant maintains that it did not receive the Notice until months later.

In April or May 1996, an investigator with the KDHR contacted Dan Levine, defendant's Logistics Center Manager, and requested wage information regarding all of defendant's employees in the Kansas City, Kansas facility.[4] The investigator

---

1. Plaintiff initially asserted state law claims for retaliatory discharge and breach of contract. He has expressly abandoned those claims in his papers. Thus, summary judgment in favor of defendant is granted on those claims.

2. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

3. At all relevant times, plaintiff's employment was covered by a collective bargaining agreement between defendant and District 2A Transportation, Technical, Warehouse, Industrial, and Service Employees' Union.

4. Although plaintiff does not specifically controvert the facts set forth in Mr. Levine's affidavit, he argues that the facts regarding statements made by the KDHR investigator constitute inadmissible hearsay. The court's rejects plaintiff's argument. Mr. Levine has

advised Mr. Levine that the KDHR was investigating whether defendant's employees were engaging in fraudulent collection of unemployment benefits. Mr. Levine provided the KDHR with the requested information. In September 1996, the KDHR investigator verbally advised Mr. Levine that she had evidence that several of defendant's employees had fraudulently collected unemployment benefits. The investigator identified the employees as George DePriest, Lester Phiffer, Ron Thibeaux and plaintiff. By this time, however, Mssrs. DePriest and Phiffer were no longer employed by defendant.

On October 8, 1996, the KDHR investigator faxed to Mr. Levine a copy of the dates during which plaintiff and Mr. Thibeaux had unlawfully collected unemployment while working for defendant. Later that day, certain members of defendant's management team and the union met to discuss the situation. Those present at the meeting included Clyde Cash, defendant's Regional Human Resources Manager; Craig Clark, defendant's Area Manager; Mr. Levine; and Phil Kelly, union representative. At this time, defendant and the union agreed that if, in fact, Mr. Thibeaux and plaintiff had fraudulently collected unemployment benefits while employed by defendant, then such conduct was grounds for dismissal.

Mssrs. Cash, Clark, Levine and Kelly then met with Mr. Thibeaux. When confronted with the information defendant had received from the KDHR, Mr. Thibeaux admitted to collecting unemployment benefits while working for defendant. Defendant terminated Mr. Thibeaux's employment. Mssrs. Cash, Clark, Levine and Kelly next met with plaintiff. When confronted with the information defendant had received from the KDHR, plaintiff admitted to collecting unemployment bene-

fits while working for defendant. Plaintiff maintained, however, that he was paying the money back. At that time, defendant suspended plaintiff for "suspicion of false representation in order to obtain unemployment benefits not due." In a letter memorializing the suspension, defendant advised that plaintiff would remain suspended "until such time as the State of Kansas determines you [sic] guilt or innocence in this matter."

After the October 8, 1996 meeting with plaintiff, Mr. Levine requested that the KDHR investigator send to him the KDHR determination with respect to plaintiff's claim for benefits. On October 24, 1996, Mr. Levine received the Notice of Determination from the KDHR and forwarded the Notice to Mr. Cash. On October 28, 1996, Mr. Cash contacted Mr. Levine and advised him to terminate plaintiff's employment based upon the KDHR's determination that plaintiff had unlawfully collected unemployment benefits while working for defendant. On that same day, defendant terminated plaintiff's employment.

After his discharge, plaintiff contacted the Black Chamber of Commerce to discuss his employment with defendant. Owen Hawkins, an agent of the Black Chamber of Commerce, contacted defendant's president and requested that defendant reinstate plaintiff. Shortly thereafter, plaintiff and Mr. Hawkins met with Clyde Cash and Craig Clark to discuss plaintiff's discharge. During this meeting, plaintiff advised Mssrs. Cash and Clark that he wanted his job back with seniority and back pay. Mssrs. Cash and Clark informed plaintiff that they would discuss whether to rehire plaintiff. After this meeting, Mr. Cash recommended to Bob Carter, defendant's Senior Vice President

---

not offered the investigator's statement to prove the truth of the matter asserted, but to show defendant's motive in terminating plaintiff's employment. *See* Fed.R.Evid. 801(c) (hearsay defined as a statement "offered in evidence to prove the truth of the matter asserted"); *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1423 (10th Cir.1991) (exhibit not hearsay because it was not offered to prove the truth of its contents, but to show defendant's motivation during a reduction in force).

of Human Resources, that defendant rehire plaintiff as a new employee on probation. Mr. Cash further recommended that plaintiff not retain his seniority or receive any back pay. Mr. Carter agreed with the recommendation.

Thereafter, Mr. Cash advised Mr. Hawkins that defendant would agree to rehire plaintiff because of plaintiff's past employment record, evidence that he had paid back the money he had unlawfully collected in unemployment benefits, and Mr. Hawkins' request that plaintiff be given a second chance. Mr. Cash further advised Mr. Hawkins that plaintiff would not retain his seniority and would not receive any back pay if he accepted defendant's offer to rehire him. Plaintiff accepted defendant's offer—including the condition that he would not retain his seniority and would not receive back pay. Defendant rehired plaintiff on December 9, 1996 as a warehouse worker. Plaintiff remains employed by defendant and is currently the second-shift warehouse trainer.[5]

In this action, plaintiff claims that defendant discriminated against him on the basis of his race, African–American, by failing to promote plaintiff to several positions, by terminating plaintiff's employment, and by rehiring plaintiff without allowing him to retain his seniority rights. Defendant moves for summary judgment on all of plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

---

5. A trainer, or leadman, is responsible for directing the workforce and working when other warehouse workers are absent. A train-er is required to have knowledge of all facets of warehouse duties.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548(quoting Fed.R.Civ.P. 1).

## III. Discussion

Plaintiff claims that defendant discriminated against him on the basis of his race when defendant failed to promote him, terminated his employment, and failed to reinstate his seniority after rehiring him. The court analyzes plaintiff's claims under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[6] In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each element of his prima facie case of discrimination. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817; *EEOC v. Flasher Co.*, 986 F.2d 1312, 1317–19 (10th Cir.1992)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (citing *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir.1994)). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.*

### A. Failure–to–Promote Claims

Plaintiff claims that defendant failed to promote him to three positions based on his race in violation of § 1981. Specifically, plaintiff alleges that defendant failed to promote him to the third-shift warehouse supervisor position in June 1996, the "pilot parts" trainer position in April 1996,[7] and the first-shift warehouse supervisor position in October 1995. As set forth below, plaintiff has failed to establish a prima facie case with respect to the third-shift warehouse supervisor position. With respect to the trainer and first-shift warehouse supervisor positions, plaintiff has failed to meet his burden of showing that there is a genuine dispute of material fact as to whether defendant's articulated reasons for its promotion decisions are pretextual. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's failure-to-promote claims.

The court first addresses plaintiff's claim that defendant failed to promote him to the third-shift warehouse supervisor position in June 1996. To establish a prima facie case in the failure-to-promote context, plaintiff must show that he "(1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority." *Simms v. State of Oklahoma*, 165 F.3d 1321, 1328 (10th Cir. 1999) (quoting *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995)). It is uncontroverted that defendant selected Gilbert Hernandez for the

---

**6.** Plaintiff initially asserted these claims under both Title VII and § 1981. In his papers, however, he concedes that he failed to exhaust his administrative remedies with respect to his failure-to-promote and loss-of-seniority claims. Thus, only plaintiff's discharge claim is properly asserted under both Title VII and § 1981. His remaining claims are asserted only under § 1981. In any event, the court applies the same standards and burdens to plaintiff's claims regardless of whether they arise under Title VII or § 1981. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n. 3 (10th Cir.1997).

**7.** The "pilot parts" program was initiated by defendant's client, General Motors, for the 1997 rebuild of the Grand Am. Defendant handled all materials for this prototype in the "pilot parts" program.

third-shift warehouse supervisor position and that Mr. Hernandez is, like plaintiff, African–American. In such circumstances, plaintiff cannot establish a prima facie case of race discrimination. *See Reynolds*, 69 F.3d at 1534 (affirming summary judgment for employer where plaintiff failed to show that promotion was given to someone of a different race). Summary judgment in favor of defendant is granted with respect to this claim.

■ Summary judgment is also appropriate with respect to plaintiff's claims that defendant failed to promote him to the "pilot parts" trainer position and the first-shift warehouse supervisor position. Even assuming plaintiff has established his prima facie case with respect to these positions, he has nonetheless failed to raise any inference of pretext. Defendant has come forward with legitimate, nondiscriminatory reasons for selecting other candidates for the positions. According to Todd George, defendant's Warehouse Manager, George Weigel was selected for the trainer position because Mr. Weigel had more than twenty years of supervisory experience prior to his employment with defendant and because he had worked (and performed well) in the pilot parts program. Mr. George averred that plaintiff was not considered for the trainer position in the pilot parts program because plaintiff's experience was in traditional warehousing and he did not have any experience in or knowledge of the pilot parts program. Similarly, according to defendant, Doug Ryan was selected for the first-shift super-

visor position because Mr. Ryan had more than twenty years of management experience prior to his employment with defendant. In fact, Mr. Ryan was an external candidate whom defendant hired specifically for the supervisor position because of his experience. Plaintiff, on the other hand, had only one year of experience as a warehouse supervisor prior to his employment with defendant.[8]

In an effort to show that defendant's proffered reasons are pretextual, plaintiff asserts only that he was more qualified for the positions than Mssrs. Weigel and Ryan. In support of this assertion, plaintiff maintains that he trained Doug Ryan and that George Weigel had received training in the domicile and badging section—a section organized and managed in part by plaintiff. After careful review, the court concludes that the evidence offered by plaintiff, even when taken in the light most favorable to plaintiff, is insufficient for a reasonable jury to conclude that defendant's proffered reasons for failing to promote plaintiff to the positions at issue are "unworthy of belief."

As an initial matter, plaintiff's " 'own opinions about his ... qualifications [do not] give rise to material factual dispute.' " *Simms v. State of Oklahoma*, 165 F.3d at 1329 (10th Cir.1999) (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir.1996)). Moreover, the evidence does not support plaintiff's assertion that he "trained" Mr. Ryan. Mr. Ryan was an external candidate hired specifically for the supervisor position. Although plaintiff may have shown

---

8. The facts regarding Mr. Weigel's and Mr. Ryan's qualifications are taken from the affidavit of Todd George. Although plaintiff does not specifically controvert those facts, he maintains that this portion of Mr. George's affidavit is not based on personal knowledge and constitutes inadmissible hearsay. As an initial matter, Mr. George's affidavit expressly states that the information contained therein is based on personal knowledge. Plaintiff offers no evidence, but only speculation, that the affidavit is not based on Mr. George's personal knowledge. Moreover, like the facts set forth in Mr. Levine's affidavit, Mr. George

has not offered the qualifications of Mssrs. Weigel and Ryan to prove the truth of those qualifications, but rather to show defendant's motivation in selecting those individuals for the positions at issue. *See* Fed.R.Evid. 801(c) (hearsay defined as a statement "offered in evidence to prove the truth of the matter asserted"); *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir.1991) (exhibit not hearsay because it was not offered to prove the truth of its contents, but to show defendant's motivation during a reduction in force). The court concludes that Mr. George's affidavit is proper Rule 56 evidence.

Mr. Ryan the nature of defendant's warehouse operations, plaintiff certainly did not "train" Mr. Ryan for the first-shift supervisor position. Mr. Ryan came to the job with over twenty years of supervisory experience. It is undisputed that Mr. Ryan had substantially greater supervisory experience than plaintiff and that defendant based its hiring decision on this experience. Plaintiff has failed to raise an inference of pretext with respect to the first-shift supervisor position. *See id.* (employer's decision to hire successful candidate based on candidate's supervisory experience is not the kind of subjective decision that, by itself, suggests pretext); *Colon-Sanchez v. Marsh,* 733 F.2d 78, 82 (10th Cir.1984) (where job description at issue highlighted significant administrative and supervisory responsibilities, employer's decision to hire candidate based on his administrative background raised no question of pretext). With respect to Mr. Weigel's qualifications, the mere fact that Mr. Weigel gained some experience in a department that plaintiff developed does not suggest that defendant's proffered reasons for selecting Mr. Weigel for the pilot parts trainer position are unworthy of belief. First, there is no evidence that Mr. Weigel's work in the domicile and badging section played any role in defendant's decision to select Mr. Weigel for the pilot parts trainer position. Moreover, Mr. Weigel had experience in and knowledge of the pilot parts program prior to his promotion. Plaintiff had no experience in the program. These circumstances, without more, cannot reasonably be thought to evidence pretext. As the Tenth Circuit has recently reiterated, the court's role is "to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." *Simms,* 165 F.3d at 1329 (citations omitted).

Finally, the record here does not suggest that defendant's decisions were motivated in any way by plaintiff's race. In fact, defendant promoted plaintiff to the first-shift trainer position in June 1996 and offered him a promotion to the second-shift supervisor position in August 1996—an offer plaintiff declined. In sum, plaintiff has not come forward with sufficient evidence from which a reasonable factfinder could draw an inference that defendant's proffered reasons for failing to promote plaintiff are unworthy of belief or that plaintiff's race was a motivating factor in defendant's decision. Defendant's motion for summary judgment is granted with respect to plaintiff's failure-to-promote claims.

### B. Discriminatory Discharge Claim

Plaintiff further claims that defendant terminated his employment based on his race. The parties dispute whether plaintiff has established a prima facie case of discriminatory discharge. The court assumes, without deciding, that plaintiff has established his prima facie case but concludes that plaintiff has failed to meet his burden of showing the existence of a genuine dispute of material fact as to whether defendant's articulated reason for plaintiff's discharge—his unlawful collection of unemployment benefits during his employment with defendant—is unworthy of belief.

In support of his pretext argument, plaintiff argues that defendant's proffered reason is false because of "substantial evidence" demonstrating that the true reason for defendant's decision to discharge plaintiff was plaintiff's plans to testify on behalf of an African–American coworker at an upcoming grievance hearing. Even assuming defendant discharged plaintiff because he was planning to testify on behalf of an African–American employee, this fact, standing alone, is insufficient to raise an inference of discrimination. At most, this evidence demonstrates that defendant did not tolerate employees who testified against the company in union proceedings. While discharging an employee for engaging in such conduct might be the basis for other relief, such conduct does not violate

Title VII or § 1981 absent some indication that the defendant's actions were race-based. To create an inference of discrimination here, plaintiff would had to have come forward with evidence demonstrating either (1) that non–African–American employees who testified against the company in grievance proceedings were not discharged; or (2) that employees who testified against the company on behalf of non–African–American employees in grievance proceedings were not discharged. Plaintiff has come forward with no such evidence.

The only other facts plaintiff offers in support of his pretext argument is that Bobby Coleman, a Caucasian employee, engaged in off-the-job misconduct but was not discharged. According to plaintiff, Mr. Coleman was convicted of and incarcerated for assault and battery arising out of an off-the-job incident. Mr. Coleman was not disciplined in any respect and returned to work following his one-week incarceration. The nature of Mr. Coleman's conduct, however, is not sufficiently "similarly situated" to plaintiff's conduct such that an inference of discrimination can be drawn. As an initial matter, the court notes that the record is devoid of any details about the circumstances surrounding Mr. Coleman's actions. In any event, committing an assault and battery is a form of misconduct quite distinct in nature from fraudulently collecting unemployment benefits. From an employer's perspective, the former may raise concerns about an employee's ability to get along with other employees in the workplace while the latter may implicate concerns about an employee's trustworthiness. While the court expresses no opinion with respect to which form of misconduct is more serious in terms of the employer-employee relationship, an employer may reasonably prioritize trustworthiness over other nondiscriminatory characteristics in

determining whether to discharge an employee for misconduct. Finally, even if these acts were sufficiently similar in nature for purposes of drawing a comparison, plaintiff has failed to come forward with any evidence that he and Mr. Coleman shared the same supervisor or were subject to the same standards governing discipline.[9] In the absence of such evidence, the court cannot conclude that plaintiff and Mr. Coleman are "similarly situated." *See Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir.1997) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standard governing performance evaluation and discipline. A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." (citations omitted)).

In sum, plaintiff has not come forward with sufficient evidence from which a reasonable factfinder could infer that defendant's proffered reason for discharging plaintiff is unworthy of belief or that plaintiff's race was a motivating factor in defendant's decision. Accordingly, the court grants defendant's motion for summary judgment on plaintiff's discriminatory discharge claim.

### C. Loss of Seniority Claim

■ Finally, plaintiff claims that defendant, because of plaintiff's race, did not allow plaintiff to retain his seniority rights upon rehiring him. In order to state a prima facie case of disparate treatment in this context, plaintiff must show: (1) that he is a member of a racial minority; (2) that he suffered an adverse employment action; and (3) that similarly situated employees were treated differently. *Trujillo v. University of Colorado Health Sciences*

---

**9.** By way of example, the record reflects that Mr. Coleman did not begin his employment with defendant until several months after plaintiff's discharge and that the incident giving rise to Mr. Coleman's one-week incarceration occurred approximately eighteen months after plaintiff's discharge.

*Center,* 157 F.3d 1211, 1214 (10th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). As set forth below, plaintiff has failed to establish the third element of his prima facie case and, in any event, has failed to offer any arguments with respect to whether defendant's proffered nondiscriminatory reason for its employment decision is pretextual. Accordingly, summary judgment in favor of defendant is appropriate on plaintiff's loss-of-seniority claim.

■ In support of his claim, plaintiff asserts that several Caucasian employees were discharged and later rehired with full seniority. Specifically, plaintiff compares his treatment upon rehire to the treatment received by Bobby Coleman, James Whitworth, Michael Mesaros and Roy Jursch. Through the affidavit of Kim Guffey, defendant's records custodian, defendant has demonstrated that three of these individuals—Mssrs. Coleman, Whitworth and Mesaros—were never discharged or rehired at any time during their employment with defendant.[10] Plaintiff has failed to controvert these facts and, thus, has not shown that Mssrs. Coleman, Whitworth and Mesaros are "similarly situated" to plaintiff for purposes of establishing his prima facie case. With respect to Mr. Jursch, Ms. Guffey averred that, although Mr. Jursch was discharged and then rehired, Mr. Jursch did not retain his seniority. Plaintiff does not controvert this fact. Thus, the record reflects that Mr. Jursch was "similarly situated" to plaintiff, but that he was treated the same as plaintiff. Because plaintiff has not identified any employees outside his protected class who were treated differently upon rehire, he cannot establish the third element of his prima facie case. Accordingly, the court grants defendant's motion for summary judgment.

Even assuming plaintiff had established his prima facie case, he has offered no arguments or facts to refute defendant's proffered nondiscriminatory reason for re-hiring plaintiff without allowing plaintiff to retain his seniority. In support of its motion, defendant maintains that it did not permit plaintiff to retain his seniority upon returning to work based on the express terms of the collective bargaining agreement.[11] In his papers, plaintiff does not even address defendant's proffered reason.[12] In the absence of any arguments from plaintiff, and because the record is devoid of any evidence suggesting that defendant's proffered reason is pretextual or that its actions were motivated by racial animus, the court grants defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 36) is **granted** and plaintiff's complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

---

10. The facts regarding Mssrs. Coleman, Whitworth, Mesaros and Jursch are taken from the affidavit of Kim Guffey. Although plaintiff does not specifically controvert these facts, he contends that defendant has failed to establish that Ms. Guffey had personal knowledge of these facts. As an initial matter, Ms. Guffey's affidavit expressly states that the information contained therein is based on personal knowledge. Moreover, as records custodian, Ms. Guffey is competent to testify about basic facts which are easily discerned from an employee's personnel file, including dates of employment and whether the employee had been discharged or rehired. Finally, as stated above, plaintiff has failed to dispute the substance of Ms. Guffey's testimony. For these reasons, the court rejects plaintiff's suggestion that Ms. Guffey's affidavit is somehow inadequate to support defendant's motion.

11. The agreement provides that "an employee shall cease to have seniority rights if [the employee engages in an act of] proven dishonesty."

12. In his papers, plaintiff responds only to defendant's argument that his loss-of-seniority claim is barred by the doctrine of accord and satisfaction. The court has declined to address this argument in light of its conclusion that plaintiff's claim fails on the merits.