733 F.2d 78
 34 Fair Empl.Prac.Cas. 1144,
34 Empl. Prac. Dec. P 34,314
Santiago COLON-SANCHEZ, Plaintiff-Appellant,
v.
John O. MARSH, Jr., in his official capacity as Secretary of
the United States Army, Defendant-Appellee.
 No. 83-1849.
 United States Court of Appeals,
Tenth Circuit.
 April 25, 1984.
 
 Richard Vallejo, Oklahoma City, Okl., for plaintiff-appellant.
 John S. Albanese, Washington, D.C. (Peter B. Loewenberg, Washington, D.C., with him on the brief), for defendant-appellee.
 Before BARRETT, LOGAN, and SEYMOUR, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Santiago Colon-Sanchez (Sanchez) appeals from a judgment of the district court for the Western District of Oklahoma denying him recovery for alleged discrimination in employment by the United States Army in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq.
 
 
 2
 At the time of the alleged discriminatory acts, Sanchez, a Hispanic male, was employed as a Civil Service civilian at the United States Army military reservation at Ft. Sill in Lawton, Oklahoma. Sanchez held the position of Equipment Repair Inspector in the Quality Assurance Branch of the Maintenance Division of the Directorate of Industrial Operations (DIO) at Ft. Sill.
 
 
 3
 On May 31, 1979, the position of Quality Assurance Specialist became vacant at Ft. Sill. Sanchez applied for this position, and was referred to the selecting official, Edward N. Brous, as one of three "best qualified" candidates for the job. Also referred to Brous were Harold D. Meyers and Alvin R. Shuler, both of whom were employed at Ft. Sill as Equipment Repair Inspectors. After reviewing the personnel files and conducting interviews with each candidate, Brous selected Shuler for the Quality Assurance Specialist position.
 
 
 4
 Subsequently, Sanchez filed a complaint with officials at Ft. Sill, claiming that he was not selected for the position because of his Puerto Rican heritage. An official of the United States Army Appellate Review Office (USACARO) investigated his complaint, and recommended that the Commander of Ft. Sill find that Sanchez was subjected to discrimination. Ft. Sill's Equal Employment Opportunity Officer, however, conducted his own investigation and disagreed with the USACARO probe; he recommended that the Commander issue a finding of "no discrimination" in Sanchez's case. Ultimately, the Commander followed the EEO recommendation and arrived at a "no discrimination" finding.
 
 
 5
 Sanchez then filed his complaint in the United States District Court for the Western District of Oklahoma claiming that he had been discriminated against on the basis of his race. After a two-day trial to the court, the district judge entered judgment against Sanchez and dismissed his complaint.
 
 
 6
 In its opinion accompanying the judgment, the district court set out its reasoning for denying Sanchez recovery. Following the burden of proof guidelines established for discriminatory hiring and promotion cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the district court found that Sanchez had established a prima facie case of discrimination, but that the United States Army had produced sufficient legitimate, nondiscriminatory reasons for its actions to rebut the presumption of discrimination created by Sanchez's prima facie case (Opinion at 2). Hence, the district court recognized its duty to decide whether Sanchez had met his ultimate burden of establishing that the United States Army had intentionally discriminated against him, by showing that the Army's stated reasons for its actions were pretextual, or a mere cover-up for a racially discriminatory decision (Id. at 3). After a lengthy discussion of the proof adduced at trial, the district court concluded that Sanchez had not met this burden (Id. at 9). Consequently, the court entered judgment in favor of the United States Army (Id. at 9-10).
 
 
 7
 On appeal, Sanchez challenges the court's factual conclusions: (1) that the United States Army presented sufficient legitimate and nondiscriminatory reasons for its actions, and (2) that Sanchez failed to meet his ultimate burden of establishing intentional discrimination on the part of the Army.
 
 I.
 
 8
 Initially, it will be instructive for us to set forth the standards used in reviewing the district court's findings. An appellate court must view the evidence below in the light most favorable to the prevailing party. Joyce v. Davis, 539 F.2d 1262, 1264 (10th Cir.1976). The district court's findings based upon this evidence are presumptively correct, and should not be set aside on appeal unless they are clearly erroneous. Walker v. Wiar, 276 F.2d 39, 41 (10th Cir.1960). The court's decisions in this regard need not be "correct," only "permissible" in light of the evidence. Volis v. Puritan Life Ins. Co., 548 F.2d 895, 901 (10th Cir.1977). A finding of fact may be deemed "clearly erroneous" only if the finding is without factual support in the record, (Farmers & Bankers Life Ins. Co. v. Allingham, 457 F.2d 21, 24 (10th Cir.1972)), or if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Clancy v. First Nat'l Bank of Colorado Springs, 408 F.2d 899, 903 (10th Cir.1969). Counsel would be well advised that the cases cited above delineating our review of trial court findings establish a very limited and narrow role for us on appeal.
 
 II.
 
 9
 Sanchez contends that the district court erred in finding that the United States Army produced sufficient legitimate and nondiscriminatory reasons for its actions to rebut Sanchez's prima facie case. The court noted that, according to Brous's testimony, he selected Shuler instead of Sanchez because of Shuler's superior administrative experience and skills. Hence, according to Brous, Shuler was better qualified than Sanchez. Certainly, Shuler's allegedly superior qualifications constituted a legitimate, nondiscriminatory reason for the Army's actions. As the Supreme Court has noted, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980) (citation omitted). We hold, therefore, that the district court did not err in finding that the Army met its burden of production by presenting legitimate, nondiscriminatory reasons for its actions.
 
 
 10
 When the employer in a Title VII suit meets this burden of production, the plaintiff must be given the opportunity to show that the stated reason was merely a pretext for prohibited discrimination. McDonnell Douglas v. Green, supra 411 U.S. at 804, 93 S.Ct. at 1825; Mohammed v. Callaway, 698 F.2d 395, 399 (10th Cir.1983). "This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Texas Dep't of Community Affairs v. Burdine, supra, 450 U.S. at 256, 101 S.Ct. at 1095.
 
 
 11
 This court has pointed out various items of evidence which may be relevant to such a showing of pretext. These items include: (1) the employer's prior treatment of the plaintiff, (2) the employer's general policy and practice with respect to minority employment, particularly statistics reflecting a general pattern and practice of discrimination, (3) disturbing procedural irregularities, and (4) the use of subjective criteria, especially when used to evaluate candidates that are not objectively equally qualified. Mohammed v. Callaway, supra. It should be stressed that this list, of course, is not intended to be exclusive; nor should each, or any individual item be required proof in a given case. The list is merely illustrative of methods by which pretext may be shown.
 
 
 12
 As an initial proposition, it is important to note that the district court found both Sanchez and Shuler qualified for the position of Quality Assurance Specialist (Opinion at 7-8). This finding is supported by the evidence. Both men were recommended to Brous as among the three best-qualified applicants. Both men had significant experience in the areas of equipment maintenance.
 
 
 13
 It is impossible, however, to conclude that the two men were identically qualified for the position. As the district court noted, Sanchez had strong "mechanical or technical" credentials, while Shuler possessed strong "administrative" credentials (Id. at 7-8). This conclusion is also supported by the record. Sanchez has spent most of his adult working life in the field of mechanical maintenance and inspection. (See R., Vol. V.) Shuler, on the other hand, spent many years in supervisory and administrative roles, with responsibilities over both personnel and equipment. (See R., Vol. VII.)
 
 
 14
 The question then becomes whether Brous acted properly in making his subjective decision to give greater weight to Shuler's strong administrative credentials than to Sanchez's mechanical credentials. We have held that where applicants are equally qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria.[1] Burrus v. United Telephone Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir.1982). See also Texas Dep't of Community Affairs v. Burdine, supra 450 U.S. at 259, 101 S.Ct. at 1096-97.
 
 
 15
 The job description prepared by the Army for the position of "Quality Assurance Specialist (Mechanical)" clearly indicates that administrative, and to a lesser extent, supervisory responsibilities constitute a large portion of the duties to be performed by a Specialist. Among other things, the description states that a Specialist must perform "administrative and technical work" relating to the monitoring and maintenance of equipment. In addition, a Specialist's duties include reviewing contractual documents, evaluating and revising quality control procedures, conferring with management, and advising the Branch Chief on various matters. (Plaintiff's Ex. 2, sub. Ex. 6.) Based upon the job description, we agree with the district court's finding that Brous acted properly in subjectively concluding that Shuler was "more qualified for the job because of his superior administrative background and that this outweighed [Sanchez's] more extensive technical background." (Opinion at 9.)
 
 
 16
 Sanchez attempted to show that the above-stated reason for hiring Shuler was pretextual, or merely a cover-up for a racially discriminatory motive. The district court, however, found that Sanchez had not met his burden of proof in this regard. We agree.
 
 
 17
 Sanchez places great weight upon statistics introduced by him at trial which reflect a proportionate underrepresentation of Hispanic employees at Ft. Sill when compared to the civilian Hispanic labor force in Lawton, Oklahoma. The district court, however, found that this data was not probative on the issue of discrimination because it did not "deal with the labor pools from which either entry level or promotion candidates [were] drawn" (Opinion at 9.) Although we cannot agree with the district court's conclusion that these statistics were wholly without probative value,[2] we must conclude that their value was, indeed, slight. As the Supreme Court has noted, "[S]tatistics ... come in an infinite variety .... [T]heir usefulness depends on all of the surrounding facts and circumstances." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 340, 97 S.Ct. 1843, 1856-57, 52 L.Ed.2d 396 (1977). In the present case, Sanchez's statistics did not reflect the number of qualified Hispanics competing for employment at Ft. Sill, a fact which reduces significantly their value for the purposes of showing intentional discrimination. See id. at 339-40 n. 20, 97 S.Ct. at 1856-57 n. 20.
 
 
 18
 Sanchez's similar reliance upon the USACARO investigation which resulted in a finding of discrimination in his case is equally unpersuasive. It must be recalled that a subsequent EEO investigation conducted by Ft. Sill's Equal Employment Opportunity Officer resulted in the opposite conclusion. The district court, however, referred to neither investigation in its opinion accompanying the judgment. The court's findings and conclusions demonstrate that a de novo review was provided, and that Sanchez was given the full opportunity to present his case. See Nulf v. International Paper Co., 656 F.2d 553, 563 (10th Cir.1981). Sanchez cites no authority indicating that the USACARO investigative report was entitled to deference from the court. Indeed, we have declined to hold that formal EEOC determinations are entitled to such weight; rather, their value rests within the discretion of the trial judge. Id.
 
 
 19
 We have reviewed Sanchez's remaining contentions. We agree with the district court's conclusion that they are insufficient to show the pretextual nature of Brous's decision to hire Shuler. The record supports the court's finding that Shuler was promoted based upon qualifications, not race.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 As previously noted, the district court observed that Sanchez and Shuler possessed particularly strong credentials in different areas. Hence, the two men could not, in our view, be deemed "equally qualified" in the strictest sense. Our holding in Burrus, however, does not require that candidates be identically qualified, but that they each possess the objective qualifications for a particular position. It is in this latter sense that Sanchez and Shuler may be deemed to have been "equally qualified" for the Quality Assurance position
 
 
 [2]
 Title VII imposes no requirement that an employee population mirror the general population. Nonetheless, evidence of longlasting and gross disparity between the composition of a work force and that of the general population may be significant. See International Brotherhood of Teamsters v. United States, 431 U.S. 324, 339-40, n. 20, 97 S.Ct. 1843, 1856-57, n. 20, 52 L.Ed.2d 396 (1977)