JOSHUA W. and Anita O., Plaintiffs,

v.

**BOARD OF EDUCATION OF WICHITA PUBLIC SCHOOLS U.S.D. NO. 259, Larry Vaughn, The Kansas State Board of Education, and Dr. Andy Tompkins, Defendants.**

No. 97–1042–JTM.

United States District Court,
D. Kansas.

Aug. 7, 1998.

USD 259 Board of Education, of Wichita Public Schools.

David M. Rapp, Hinkle, Eberhart & Elkouri, L.L.C., Wichita, KS, for Larry Vaughn, Janet Danitschek, Chip Gramke, Claradine Johnson, Marty Marshall, Carol Rupe, Jean Schodorf, Jerome Williams.

Tim Connell, Connell & Connell, El Dorado, KS, Alan L. Rupe, Stephanie N. Scheck, Morrison & Hecker L.L.P., Wichita, KS, for Unified School District 385 Andover, Board of Education, Patrick Terry, Pam Clapp, Gary Harmon, Reed Harrison, Carly Haynes, Nancy Kirkendoll, Nancy Lusk, Rich Stenson.

Dan Biles, Gates, Biles, Shields & Ryan, P.A., Overland Park, KS, Rodney J. Bieker, Kansas Department of Education, Topeka, KS, for Alan Alderson, Kansas State Board of Education, Dr. Andy Tompkins.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Plaintiffs Joshua W. and his mother Anita O. have brought the present action under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. against the Wichita School District, U.S.D. 259, along with the individual members of the board of education and its Superintendent, Larry Vaughn, as well as the Kansas Board of Education and the Commissioner of Education, Dr. Andy Tompkins. In an order dated June 11, 1997, the court granted a motion to dismiss similar claims raised against the Andover School District. Currently before the court are two motions for summary judgment by the Wichita defendants and by Commissioner Tompkins.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital,* 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a

Kathleen R. Urbom, Topeka, KS, Patricia J. Coffey, Brown, Dengler, Good & Rider, L.C., Wichita, KS, Margie Best, Oak Park, IL, for Joshua W., Anita O.

Thomas R. Powell, David M. Rapp, Hinkle, Eberhart & Elkouri, L.L.C., Wichita, KS, for

reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### 1. Motion by the Wichita Defendants

The District's motion is similar to that advanced previously by the Andover School District—that liability under IDEA does not exist since Joshua was not a resident of the school district.[1] The Wichita District argues that, on the basis of the facts produced in discovery, Joshua may have been a resident of the Andover District or some other location, but that he was not a resident of the Wichita District at the time of the attempted November 20, 1995 enrollment. The evidence and factual statements submitted by the parties compels the following findings of fact.

Joshua W. was born on May 1, 1978, and is now 19 years of age. His natural parents are Mr. Dennis W. and Ms. Anita O. Anita O., who has had sole custody of Joshua since a 1980 divorce, is the sole owner of W[ ] Building Maintenance, a commercial cleaning business with 175 employees. Joshua W. and his parents resided in Wichita, Kansas while he was growing up, where he attended the public schools of U.S.D. 259 until approximately January 27, 1995.

District educators identified Joshua W. as behaviorally disordered, and he was given special education under the IDEA throughout his attendance in the school system pursuant to individualized education programs (IEP). In their response to the defendants' summary judgment motion, the plaintiffs vigorously and persistently attack the adequacy of these earlier programs, but the present complaint is directed solely at whether U.S.D. 259 is required to pay for the private residential placement in 1995.

In November of 1994, the District revised the IEP for Joshua, calling for placement in a special day school. Joshua's parents consented to the new IEP. The sixteen-year-old Joshua was transferred from Wichita High School Northwest to Sowers Alternative School, a special day school offering special education to behavior-disordered students. After arriving at Sowers, Joshua was on separate occasions confined as a juvenile offender at the Sedgwick County Youth Residence Hall (YRH), where he also received education services from the District.

On January 27, 1995, Joshua left YRH. He did not return to Sowers, and quit attending classes in the District's schools. He lived in a number of locations, both inside and outside Kansas. According to the testimony of Anita O., in February of 1995, Joshua was confined at juvenile facilities in Larned, Kansas for approximately six months. In July, he spent a brief period of time in Charter Hospital receiving substance abuse treatment. He also received mental and substance abuse treatment at Shadow Mountain, a residential facility in Tulsa, Oklahoma.

According to the plaintiffs, Joshua lived intermittently with his father, and could be

---

1. In its prior order on the motion to dismiss, the court addressed the background and purposes of IDEA, and those conclusions are equally applicable here.

found at 144 S. Sheridan in Wichita. Anita O. provided Joshua's support.

On September 1, 1995, Joshua W. threatened Anita O. with a knife while she was driving him to St. John's Military School in Salina, Kansas. Anita O. filed a formal criminal complaint and Joshua was placed in the Saline County Jail. He was prosecuted as an adult for aggravated criminal assault in violation of K.S.A. 21-3410(a). He plead guilty to the charge on September 22, 1995. His sentencing hearing was scheduled for November 20, 1995, and he was authorized to attend Kemper Military Academy in Boonville, Missouri until the date of his sentencing.

Joshua began attending Kemper in early October, 1995. While at Kemper he was cited for violating the school's code of conduct and expelled at the order of the commandant.

Previously, on March 1, 1995, Anita O. changed her residence to a location outside U.S.D. 259, moving to a new home at 14221 East Sport of Kings, within the boundaries of U.S.D. 385, the Andover, Kansas School District. She acknowledged in her deposition that she knew she was moving into another school district because she had another school age child. Joshua's father, Dennis W., also left U.S.D. 259 in the spring of 1995, moving to Potwin, Kansas.

Prior to November 2, 1995, Anita O. contacted Three Springs Outdoor Therapeutic Program, a residential educational facility for adolescents in Centerville, Tennessee, to inquire about enrolling Joshua. On November 4, she completed a enrollment form for Three Springs for the 1995–96 school year. On November 6 and 7, she telephoned Three Springs six times. Joshua was eventually admitted to Three Springs on November 20, 1995. On November 16, Anita O. bought two airline tickets for herself and Joshua to fly from Kansas City, Missouri to Nashville, Tennessee.

She did not use the tickets. On November 17, 1995, she called the District's Office of Special Education and Robert Coleman, the principal of Sowers, to discuss Joshua's reentry into the District school system. Coleman told Anita O. she should enroll Joshua at Sowers since this was the last placement under the IEP, and the staff there could then talk to her about options for placement. Joshua was then enrolled at Sowers, although he remained physically at Kemper. At this time, Joshua had not attended any school in the district for almost ten months. His IEP was due to be reviewed November 18, 1995. During the discussion on November 17, a meeting to discuss Joshua's placement was set for Monday, November 20 at Sowers.

On November 20, Anita O. met with Coleman, and with school psychologist Tom White, social worker Carolyn Moncivais, and guidance counselor Ken Henderson. Anita O. signed release forms so the staff could obtain information about Joshua's activities since last attending Sowers. Coleman told Anita O. that, pursuant to the IEP, Joshua would attend Sowers until the school got the additional information and developed a revised IEP and placement decision.

Anita O. asked for residential placement, but testified that she knew no decision had been made at that time. In addition, while she told the staff of the address in Wichita where Joshua would be living, Anita O. did not inform the District that she had moved into a new school district, nor did she inform the District that she had been working to enroll Joshua at Three Springs in Tennessee. According to her deposition testimony, Anita O.'s primary concern was finding a way for the District to pay for placement at Three Springs.

The same day Anita O. met with the Sowers staff, Joshua appeared in Saline County Court for the sentencing hearing which had been set nearly two months earlier. He was sentenced to an 18–month term of imprisonment. In lieu of prison, the court put Joshua on probation for 24 months. As a condition of the probation, Joshua was required to enter and complete the program at Three Springs and obtain an alcohol, drug, and mental health evaluation there.

Immediately following her meeting with the Sowers staff in Wichita on November 20, Anita O. drove to Boonville, where she picked up Joshua. On November 21, they drove to Kansas City and then flew to Nashville, Tennessee. They used separate tickets from those purchased on November 16. Using a

rental car, they drove to Centerville and Joshua was placed at Three Springs. Following up the November 20 meeting, District staff tried to contact Anita O. to discover where Joshua was. Anita O. did not return these telephone calls. On December 4, her attorney wrote that she was beginning an administrative claim.

The District did not learn of Anita O.'s residence in the Andover School district until January 16, 1996. Following an evidentiary hearing on October 4, in which both the parties were represented by counsel and presented witnesses, an administrative hearing officer found that Joshua was not a resident of the District on November 20, 1995, and that the District was not financially responsible for his placement. Anita O. appealed this determination, which was affirmed by a state review officer appointed by the Kansas State Board of Education on December 31, 1996. The present action was instituted January 30, 1997.

Joshua attended Three Springs in Tennessee until October of 1996. On November 27, 1996, the Saline County District Court modified the terms of Joshua's probation, requiring him to enter and complete a program at Benchmark, a private facility in Redlands, California.

Joshua left without completing the Benchmark program after three months. On December 1, 1997, he was convicted of two counts of aggravated assault and of possession of marijuana in the District Court of Sedgwick County. On January 8, 1998, he was sentenced to a term of imprisonment of 25 months.

■ Defendants argue there is evidence which directly contradicts the plaintiffs' assertion Joshua lived in Wichita. In bonding out on the Saline County criminal case, Joshua wrote that his address was 14221 East Sport of Kings, Wichita, Kansas, 67203— within the Andover School District. The plaintiffs deny this, and repeatedly point to an "SRS determination that Joshua not live with his mother." The document cited by

plaintiffs, Exhibit 4, however, does not prohibit Joshua's living with his mother. Joshua had been admitted to Larned Youth Center following a felony theft. In Exhibit 4, a social worker for SRS wrote in August of 1994 that he was "approving his moving effectively to his father's home" in Wichita. Although the letter does recognize that there was a "conflictive relationship" between Joshua and his mother, the letter does not prohibit Joshua from living with his mother. Indeed, the letter actually contemplates the possibility that Joshua would stay with his mother, recommending the parties reach a joint set of rules "for Joshua to abide by *regardless of which home he is at."* (Exh. 4, emphasis added).

The main issue here is the IDEA claim by the plaintiffs against the District.[2]

Two grounds exist for dismissing the present action. As noted in the court's order of June 11, 1997, a school district's obligation to enroll a given student turns upon residency. KSA 72–1046(a) provides a right to attend school in a district based upon residence:

Any child who has attained the age of eligibility for school attendance may attend school in the district in which the child lives if (1) the child lives with a resident of the district and the resident is the parent, or a person acting as parent, of the child. . . .

The statute also explicitly defines "a person acting as parent" as

(A) a guardian or conservator, or (B) a person, other than a parent, who is liable by law to maintain, care for, or support the child, or who has actual care and control of the child and is contributing the major portion of the cost of support of the child, or who has actual care and control of the child with the written consent of a person who has legal custody of the child, or who has been granted custody of the child by a court of competent jurisdiction. . . .

72–1046(d).

Based upon the facts presented to the court, it would appear that Joshua was not

2. To the extent the Amended Complaint raises issues beyond the 1995–96 school year placement such as a denial of free appropriate public education (FAPE), those issues have never been subjected to administrative review, which considered only the narrow issue of Joshua's residency.

Thus, the pervasive attack on the entirety of Joshua's education in the District, which the plaintiffs raise for the first time in their response to the summary judgment motion, should be dismissed for the failure to exhaust administrative remedies.

entitled to educational services from the District since he was neither living in or physically present in the district in November 1995, and was not living with a parent or person acting as a parent in the District. Both Joshua's parents had moved out of the School District. Although plaintiffs assert that at some time Joshua continued to live in Wichita with his slightly older sister, the sister does not constitute a "person acting as parent" within the meaning of state law given the state of this record. Anita O. has directly acknowledged that she continued throughout this period to act to support Joshua and to make decisions regarding his control and education.

As the court previously concluded, a school district has the obligation under IDEA to seek out disabled children, whether they are enrolled or not, who require special attention. *See Robertson County Sch. Sys. v. King*, 99 F.3d 1139, 24 IDELR 1036, Case No. 95–5526 (6th Cir.1996). A school district is not required, however, to disregard established rules of residency and undertake the burdensome task of searching throughout the entire state for disabled children. *See Susan R.M. v. Northeast Independent School District*, 818 F.2d 455 (5th Cir.1987); *Hall By and Through Allread v. Freeman*, 700 F.Supp. 1106 (N.D.Ga.1987). Here, the uncontroverted facts establish that, by the time of the attempt, or, more accurately, the pretended attempt to enroll Joshua in November of 1995, he cannot be considered a resident of the Wichita school district.[3]

■ The District also argues that plaintiffs should not be permitted to impose financial responsibility on the District where Anita O.'s own actions effectively prevented the District from reviewing Joshua's status and

formulating a new IEP. The purpose of the IDEA is to "ensure that the local educational agency and the parents work collectively in finding an appropriate placement for their child." *Fagan v. District of Columbia*, 817 F.Supp. 161, 164 (D.D.C.1993). If a parent's acts frustrate the decision making process, the parent may be estopped from relief under the IDEA. Thus, in *Wise v. Ohio Dept. of Educ.*, 80 F.3d 177, 184 (6th Cir.1996), the court concluded that by "unilaterally chang[ing] their children's educational placements, the parents are not entitled to have their children educated at public expense."

The evidentiary record before the court supports a similar conclusion. At the time she contacted District officials in November, 1995, Anita O. had effectively engineered Joshua's placement in a private facility in Tennessee. She had purchased airline tickets for travel to Tennessee, and had enrolled her son at the Tennessee facility. She mentioned none of this to District staff. She has acknowledged that, at the conclusion of her discussions with the staff, she knew the District had made no decision regarding Joshua's placement. She knew that the staff said they "would need to further evaluate Josh and Josh's situation before they made a final decision." (Tr. at 209). When the staff asked where Joshua was living, she stated that he could be picked up at the address on South Sheridan, even though she knew Joshua was currently at a military school in Missouri and would be moved to Tennessee immediately after her discussion with the staff.

Thus, Anita O.'s actions were not prompted by a sincere effort to obtain a final decision from the District regarding placement, but were simply seeking to manipulate the District into funding a placement upon which she had already resolved.[4]

---

3. The present result is not inconsistent with earlier dismissal of the Andover school district, which reflected a failure in the pleadings by the plaintiffs; the present summary judgment motion is premised on a failure of proof. That is, the action against the Andover School District could not be maintained in light of the plaintiffs' direct statement in the complaint that Joshua had "resided all his life" in the Wichita School District. The plaintiff never attempted to correct or even qualify this assertion by amendment or other

means. The uncontroverted facts submitted with the present motion establish that Joshua was not residing in the Wichita school district during the time prior to his enrollment.

4. As noted previously, the court is not unmindful of plaintiffs' claims that the District for several years failed to fulfill plaintiff's obvious need for a residential placement, and that it never had such a facility in the District. Those claims may be

■ In the Amended Complaint filed by plaintiffs, the allegations which form the core of the IDEA claim are substantially repeated and then set forth in Counts II and III as violations of section 504 (FAPE) and 42 U.S.C. § 1983. In light of the findings cited above relating to the removal of Joshua from Kansas, the court finds the individual Wichita School District defendants are qualifiedly immune with respect to the section 504 and 42 U.S.C. § 1983 claims advanced by plaintiffs.

### 2. Motion by Defendant Tompkins

Defendant Tompkins explicitly adopts the argument of the Wichita District that Anita O. frustrated the evaluation process. He also argues he is qualifiedly immune for failing to intervene in the due process proceedings initiated by Anita O. Finally, he argues generally that tuition reimbursement is inappropriate and there is no guarantee of a free public education where a special education student voluntarily accepts admission to an out-of-state facility at his own expense to escape imprisonment as the result of a felony criminal case.

The plaintiffs have now submitted a Response to Tompkins' Motion for Summary Judgment. Despite obtaining an extension of time to file their response, the response was filed several days beyond the extended deadline. It was not signed by local counsel.[5] Most importantly, the Response provides only a separate narrative of the facts, completely ignoring the statement of facts in Tompkins' motion. The Response thus violates D.Kan.Rules 7.4, 83.5.4(c), and 56.1.

The court finds that the first two violations should not be and are not fatal to plaintiffs' claims. The delay in the response was not significant, and plaintiffs have subsequently obtained new local counsel who has filed an appearance in the matter. The failure to comply with the standards for responding to a motion for summary judgment cannot be excused so easily, however. Rule 56.1 con-

tains its own sanction—all of the facts presented in the defendant's motion will be deemed uncontroverted.[6]

Since the facts presented to the court are wholly those presented by defendant, the court is compelled to concur with each of the arguments advanced by the defendant. Accordingly, the court finds the placement in Tennessee to obtain probation does not qualify as a unilateral placement for educational purposes under *School Comm. of Burlington v. Mass. Dept. of Ed.*, 471 U.S. 359, 371, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); that defendant Tompkins did not violate plaintiffs' due process rights and in any event is qualifiedly immune; and that Anita O.'s actions effectively frustrated the evaluation and review of Joshua's placement. Accordingly the claims against defendant Tompkins will be dismissed.

A motion to reconsider is neither invited nor encouraged. Any such motion shall be filed within ten days of the date of this order. Any motion for reconsideration must comply with Rule 7.3 of this court and the standards set out in *Comeau v. Rupp*, 810 F.Supp. 1172, 1174 (D.Kan.1992). The motion may not exceed five pages in length, including supporting arguments and authorities, regardless of the number of points raised. Responses shall be filed within five days of the date of such a motion, and shall be limited to four pages each. No replies may be filed.

IT IS ACCORDINGLY ORDERED this 7th day of August, 1998, that the defendants' Summary Judgment Motions (Dkt. Nos. 68 and 96) are granted.

---

valid, but do not fall within the scope of this action as plaintiffs framed it.

**5.** Another copy was filed approximately one week later which was signed by local counsel.

**6.** Nor will the court delve through defendants' lengthy narrative in an attempt to correct the

error and identify controverted facts. The very purpose of Rule 56.1 is to avoid such a misdirection of judicial resources. Moreover, such an approach would vitiate the explicit sanction contained within the rule—the requirement that the facts which are not admitted or denied will be deemed admitted.