**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 24 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

GENE A. JONES,

    Plaintiff - Appellant,

    v.

EATON CORPORATION,

    Defendant - Appellee.

No. 00-3400
(D. C. No. 99-CV-1341-JTM)
(D. Kansas)

---

ORDER AND JUDGMENT[*]

---

Before **SEYMOUR** and **PORFILIO**, Circuit Judges, and **STAGG,** District Judge[**].

---

    Due to the events of September 11, 2001, the parties were not able to present oral

arguments as scheduled. The panel has determined unanimously to grant the parties'

motion for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th

Cir. R. 34.1(G). The case is therefore submitted without oral argument.

    Gene A. Jones ("Jones") appeals from the district court's grant of summary

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    The Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

judgment in favor of his employer, Eaton Corporation ("Eaton"). Jones challenges the district court's decision on his claims of race and age discrimination in violation of Title VII, the Age Discrimination in Employment Act ("the ADEA") and 42 U.S.C. § 1981. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

Jones is a 56 year old black male who applied for a promotion with Eaton when a position as a first shift production supervisor became available. Four applications were received for the job and Jones was the only minority applicant. After a review of the submissions by the applicants, including their resumes, cover letters, a four-page questionnaire, and after an interview with Matt Haefner, a human resources representative, and Ken Ratzlaff, the product supervisor for the gear pumps area, a 32 year old, white male was selected for the position.

Jones sued Eaton for race and age discrimination. The district court granted summary judgment in favor of Eaton on all of Jones's claims. Relevant to this appeal, the district court concluded that Jones's race discrimination claim failed because he did not establish that Eaton's reasons for failing to promote him were pretextual.

## I. BACKGROUND

Jones is a black male who was born on January 28, 1944. Jones began working as a janitor for Eaton's predecessor, Cessna Aircraft, on November 17, 1965, at its manufacturing facility. Within a year after he was hired at Cessna, Jones became a machine operator, working on various machines until September 3, 1979, when he was

selected for promotion to first shift section foreman in the cylinders area. As section foreman, Jones was responsible for overseeing other machine operators and monitoring production equipment in a designated section of the cylinders area.

In 1980, Cessna underwent a workforce reduction and reorganization and, as a result, Jones was transferred to a second shift section foreman position in the valves area of the plant. Cessna underwent another reduction in force in 1982, which resulted in the elimination of several section foreman positions and on March 1, 1982, Jones was displaced from his section foreman job by an employee with greater seniority. Jones thus resumed working as a machine operator on the first shift.

On January 10, 1983, Jones returned to a section foreman position on the second shift in the valves area. Shortly thereafter, Jones learned that a section foreman on the first shift had announced his retirement. After a brief mixup regarding seniority, Jones was placed in the position of first shift section foreman in valves in February of 1983. Shortly thereafter, however, Jones's first shift section foreman job was eliminated and he again was placed on the second shift as a section foreman in the valves area. During his next performance appraisal in November 1984, Jones's job performance as a section foreman was rated as "unsatisfactory" and he was not awarded a merit increase. Less than three months later, Jones stepped down from his section foreman job and returned to the first shift as a machine operator.

In 1986, General Dynamics acquired the plant from Cessna and Eaton purchased

the plant from General Dynamics in June 1988. Shortly thereafter, Eaton announced that all new supervisors would be required to have college degrees. Jones had received an associate degree in business/accounting but did not have a four-year college degree. In light of Eaton's new requirement and upon receiving encouragement from Eaton's human resource representative and the plant's general manager, Jones obtained a bachelor of science degree in 1991, majoring in vocational technical education. According to Jones, he subsequently applied for several positions at the plant, including a manufacturing engineering job, a buyer position, and two different production supervisor jobs in the medium duty and cylinders areas. Jones was not selected for any of these positions.

In early 1998, Eaton posted a notice of an opening for a first shift production supervisor in the gear pumps area. The notice stated that the production supervisor would be "responsible for setting and meeting goals within the specific department, assisting in meeting product line and plant goals, and for all phases of production within the specific department." Appellant's Appendix–Volume 1 at 425. The notice also indicated that a bachelor's degree in engineering, business, or a "related field" was required for the position and that supervisory experience was preferred. See id. In addition to the basic job requirements listed on the notice, Eaton was seeking the following specialized knowledge in a production supervisor:

> Must have an understanding of the appropriate manufacturing process. Needs to understand and utilize manufacturing techniques.

Management, leadership and human relations skills are needed to manage a complex manufacturing department. Need to understand company policies and have the skills to administer them.

Communication skills: verbal, written and listening.

. . . .

Appellant's Appendix–Volume 1 at 425. The job description, which had been prepared in August of 1996, long before the litigation began, also stated that production supervisors are responsible for supervising production machine operators, testers, assemblers/builders and material handlers/car loaders. See id. at 424. Production supervisors, however, are not responsible for operating any machinery, as the collective bargaining agreement forbids supervisors from performing bargaining unit work such as operating machinery.

Jones submitted a cover letter and resume to human resources representative Matt Haefner regarding the production supervisor position. There were three other internal candidates for the production supervisor job: Larry Garner, Steve Frank and Kevin Moore. Jones was the only member of a minority among the four job candidates. All of the candidates were asked to complete a four-page questionnaire prior to their interviews. The preamble to the questionnaire contained the following instructions: "Please fill out the following open-ended questionnaire in black ink (no typing) and return to Matt Haefner in Human Resources by Friday, February 20 1998 at 5:00 P.M. Use extra paper if necessary." Appellant's Appendix–Volume 1 at 117, 161, 400-01 and 445. Jones did not begin working on his questionnaire until February 20, after being reminded that his

responses were due that day. Jones spent only ten minutes completing the questionnaire using blue ink to answer various sections.

Haefner and Ken Ratzlaff, the product line supervisor for the gear pump area, interviewed all four job candidates who applied for the production supervisor position. After the interview process was completed, Ratzlaff and Haefner selected Moore, a 32 year old white male, for the production supervisor position. This selection was made jointly by Ratzlaff, a 52 year old male, and Haefner, a 27 year old male.

Ratzlaff and Haefner determined that Moore was the best qualified candidate in terms of his education, manufacturing knowledge and expertise, interpersonal and management skills and written and verbal communication skills, as evidenced by their remarks on their interview evaluations of the respective candidates. Both Jones and Moore had college degrees and thus satisfied the minimal educational requirements for the production supervisor position. However, both Ratzlaff and Haefner concluded that Moore's formal education was more extensive and pertinent to the production supervisor job than that of Jones. Jones holds an associate of arts degree in accounting/business and a bachelor of science degree in vocational technical education while Moore has an associate of science degree, a bachelor of science degree in mechanical engineering technology and a master of science degree in industrial safety management.

Although both Jones and Moore were knowledgeable about manufacturing processes and techniques, Ratzlaff and Haefner determined that Moore's experience in

various manufacturing facilities made him more qualified than Jones for the production supervisor job. Jones had worked at the plant for over thirty years, primarily as a machine operator. At the time of the interviews, Jones had been assigned to the gear pumps area for several years and, thus, was very knowledgeable regarding the manufacturing processes used in that area. Jones had worked as a section foreman for a total of approximately four and a half years. However, he had not worked in this capacity since 1985, when he voluntarily stepped down from the section foreman job and had received an "unsatisfactory" performance review. Moore had been working at the plant as an environmental health and safety/manufacturing engineer for approximately sixteen months. Moore's responsibilities at Eaton required him to work in the production areas on a daily basis. Before he was hired at Eaton, Moore had worked for several other manufacturing facilities in various positions. While working for Eaton, Moore also taught manufacturing management at a local community college.

Based upon information elicited through the application and interview process, Ratzlaff and Haefner also determined that Moore had much stronger interpersonal and management skills than Jones. Throughout most of his career with Eaton, Jones performed non-supervisory functions which, in his words, required him to manage only himself. See Appellant's Appendix–Volume 1 at 275. Although Jones's previous work as a section foreman required supervisory and management skills, as previously noted, he had not worked in that capacity for twelve years and his last performance appraisal in that

position was "unsatisfactory." Moore, however, had approximately eight months of supervisory experience with another manufacturing facility before he began working for Eaton. Haefner felt that Moore's supervisory experience was essentially equivalent to that of Jones, as although Jones had been a section foreman for a longer aggregate period of time, Moore's supervisory experience was much more recent. See id. at 173-74.

Jones also failed to persuade the interviewers that he had the initiative or drive necessary to manage an area of the plant. To the contrary, when Jones was asked during the interview whether he had suggested any ideas to management, Jones stated that as a machine operator, he was not in a position to do anything about his ideas. Consequently, both interviewers noted on their written interview evaluations that Jones did not share his ideas with his current supervisors, reflective of a lack of assertiveness or "push for new direction" on his part. Appellant's Appendix–Volume 1 at 427, 438, Supplemental Appendix of Appellee at 784-85. In contrast, Moore demonstrated to the interviewers that he had the requisite initiative and leadership to manage the gear pumps area. Unlike Jones, Moore pointed out in his resume and during the interview that he had successfully undertaken several assignments at Eaton and in his previous employment in which he managed multiple projects, assumed leadership roles and interacted with upper management. See Appellant's Appendix–Volume 1 at 428, 433-437.

Both Ratzlaff and Haefner concluded that Moore's written and verbal communication skills were far superior to those of Jones. Ratzlaff and Haefner evaluated

the written communication skills based upon the candidates' written submissions to the company in connection with their applications for the production supervisor job.  See Appellant's Appendix–Volume 1 at 160-66.  On his interview evaluation form, Haefner noted that Jones's communications skills would "hinder his effectiveness at managing that section of gear pumps," but that Jones "could be successful as a 2nd shift supervisor," as the second shift position did not involve nearly as much communication with upper management and customers as did the first shift position.  Id. at 427.

Jones's written submissions, including his correspondence to the company and his questionnaire responses, lacked detail and contained basic spelling and grammatical errors.  In contrast, Moore's written submissions to the company were more thorough than those submitted by Jones.  Additionally, both Ratzlaff and Haefner concluded that Jones's verbal responses during the interview were poor and that Jones did not express himself clearly or provide helpful answers to their questions.  For example, when Jones was asked whether he had any ideas for improving his work area, he responded that his ideas were all "up here" and pointed to his head.  Jones also failed to respond when he was asked to identify his weaknesses and he also gave contradictory responses to some of the interviewers' questions.  In contrast, Ratzlaff and Haefner determined that Moore demonstrated good verbal communication skills, conducted himself appropriately and responded fully to each question asked of him during the interview.

Moreover, both Ratzlaff and Haefner were struck by Jones's concluding remarks in his interview. When Jones was asked whether he could make difficult decisions, Jones stated that he "could and would bomb Saddam Hussein." Appellant's Appendix–Volume 1 at 198, 317 and 438. Although he did not elaborate on this statement at the time, Jones later explained during his deposition that he intended to impress upon the interviewers that he was able to make tough decisions as a supervisor. See id. at 317.

Jones was subsequently informed that he would not be promoted to the production supervisor position and that Moore had been selected for the job. Shortly thereafter, Jones appealed the promotion decision to the plant's human resources manager and requested that the decision be overturned. The human resources manager informed Jones that the promotion decision was not his to make.

On March 11, 1998, Eaton officially announced that Moore was being named production supervisor for gear pumps effective March 16, 1998. On July 13, 1998, Jones filed a charge of discrimination against Eaton, asserting that the company denied him a promotion to the production supervisor job because of his race and/or age.

## II. LAW AND ANALYSIS

A. Plaintiff's Failure To Abide By Local Rules.

Jones claims that the district court improperly disregarded certain disputed material facts. A sanction such as deeming facts admitted is a type of evidentiary ruling reviewed

for abuse of discretion.  See Sports Racing Services, Inc. v. Sports Car Club of America, Inc., 131 F.3d 874, 894 (10th Cir. 1997).

Local rule 56.1 sets forth a non-movant's obligations when responding to a motion for summary judgment.  The rules states:

> A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.  All material facts set forth in the statement of the movant shall be deemed admitted for the purposes of summary judgment unless specifically controverted by the statement of the opposing party.

The application of local rules has previously been upheld by this court.  See Joshua W. v. Board of Educ. of Wichita Public Schools U.S.D. No. 259, 13 F.Supp.2d 1199 n. 6 (D. Kan. 1998), aff'd, 211 F.3d 1278 (10th Cir. 2000).  Under both Federal Rule of Civil Procedure 56 and Local Rule 56.1, Jones's unsubstantiated assertions of fact were insufficient to create a jury issue and could be disregarded by the district court.  See Hom v. Squire, 81 F.3d 969, 974-75 (10th Cir. 1996).  There would be nothing arbitrary or manifestly unreasonable had the court done so.  Local Rule 56.1 plainly authorized the court to deem admitted for purposes of summary judgment all material facts set forth in the statement of the movant.  Other courts within the Tenth Circuit employ similar rules and their application has not been questioned.  See Taylor v. Pepsi-Cola Co., 196 F.3d

1106, 1108 n.1 (10th Cir. 1999); Mitchael v. Intracorp, Inc., 179 F.3d 847, 856 (10th Cir. 1999). Furthermore, Jones has not directed this court to any properly stated and supported factual assertions in his memorandum that were disregarded by the district court. Accordingly, the district court did not err in disregarding Jones's unsupported assertions of fact.

B.      Age And Race Discrimination.

We review the grant of summary judgment de novo, applying the same standard as did the district court. See Thomas v. National Ass'n of Letter Carriers, 225 F.3d 1149, 1154 (10th Cir. 2000). Accordingly, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In reviewing the appeal from the grant of summary judgment against [Jones], we accept the version of the facts most favorable to [Jones], the non-moving party." Thomas, 225 F.3d at 1152 n. 1.

Although the movant must show the absence of a genuine issue of material fact, he need not negate the nonmovant's claim. See Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." Id. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to

create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

1.      Age Discrimination.

Jones asserts he is appealing the district court's decision on both age and race discrimination. Nowhere in his brief on appeal does Jones address the age discrimination issue. Instead, he focuses entirely on the issue of race discrimination. Thus, because he presents no argument at all on the age discrimination issue, we consider Jones's appeal on this point waived and consider only his race discrimination claim. See Gaines-Tabb v. ICI Explosives, USA, Inc., 160 F.3d 613, 624 (10th Cir. 1998) ("[A]rguments not set forth fully in the opening brief are waived.").[1]

2.      Race Discrimination.

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) provides the framework for analyzing circumstantial evidence under either section 1981 or Title VII. See Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999). Pursuant to the McDonnell Douglas framework, the employee "must carry the initial burden . . . of establishing a prima facie case of racial discrimination." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (quotation marks and citation omitted).

---

[1]The court notes, however, that even if we considered Jones's age discrimination claim, it would fail for the reasons the claim of race discrimination fails.

-13-

"A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination . . . or indirect (i.e., circumstantial) evidence of discrimination." Kendrick v. Penske Transp. Services., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). Jones relies on indirect evidence to support his claim of race discrimination under Title VII and section 1981.

Once the employee establishes a prima facie case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action." Id. (quotation marks and citation omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999). If the employer satisfies its burden of production, the employee must then show that the employer's justification is pretextual–i.e., unworthy of belief. See Kendrick, 220 F.3d at 1226, 1230. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148, 120 S. Ct. 2097, 2109 (2000).

Eaton does not dispute that Jones has established a prima facie case of race discrimination and based upon our review of the record, we agree that Jones has met his burden in this regard, as (1) he was a member of a protected class, (2) he applied for and

was qualified for the position, (3) despite being qualified, he was rejected, and (4) after he was rejected, the position was filled.  See Kendrick, 220 F.3d at 1225; E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1195 n. 6 (10th Cir. 2000).  The burden thus shifts to Eaton to provide a legitimate, nondiscriminatory reason for failing to promote Jones.  Eaton asserts that it failed to promote Jones because, after considering all of the information possessed by the interviewers, he was not the best qualified candidate. Eaton, therefore, has articulated a legitimate, nondiscriminatory reason for failing to promote Jones.

In light of this showing, the burden falls on Jones to counter with specific facts showing that Eaton's reasons for its decision were unworthy of credence or racially motivated in some way.  See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1317 (10th Cir. 1999).  This showing must be made by reference to affidavits, deposition transcripts, or specific exhibits.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).  Repeated, unsupported assertions by Jones that Eaton's actions were based on his race are insufficient to defeat summary judgment.  However, a plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted).  In an effort to establish pretext, Jones contends on appeal that the district court erroneously

ignored his evidence of pretext and failed to view the evidence in a light most favorable to him, as it was obligated to do under Federal Rule of Civil Procedure 56.

Jones argues he presented sufficient evidence demonstrating Eaton's reason for failing to promote him was pretextual. Jones also opines that he was obviously the more qualified candidate for the position. In support of this assertion, Jones relies principally upon a chart he devised, detailing what he perceives to be his superior qualifications when compared to those of Moore. Initially, this court notes that the chart is largely unsupported by admissible summary judgment evidence. Additionally, Eaton details numerous examples of why Eaton felt that Moore's qualifications were superior to those of Jones and why it decided to select Moore for the first shift production supervisor. The factors relied upon most heavily by Eaton in support of its decision include Moore's superior communication skills--both verbal and written--as evidenced through the interview and written questionnaires and confirmed through the notes of the interviewers. Additionally, the interviewers were also bothered by a comment made by Jones during his interview with respect to the bombing of Saddam Hussein. Although Jones attempts to distract the court with a few "red herrings", such as unsupported allegations that Eaton failed to comply with its policy of minority considerations, that there was racial disparity in the workforce, and that other minority employees had a fear of retaliation, there is no evidence to support any of these unsubstantiated allegations.[2]

_____

[2]The Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151-53, 120 S. Ct. 2097, 2110-12 (2000), emphasized the relevance of conduct showing

Jones also argues that Eaton based the decision not to promote him on subjective criteria. Jones places great weight on the fact that he had greater experience than Moore, which he claims made him more objectively qualified for the job. However, an employee's "own opinions about his . . . qualifications [do not] give rise to a material factual dispute." Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1329 (10th Cir. 1999) (citing Rabinovitz v. Pena, 89 F.3d 482, 487 (7th Cir. 1996)). While Jones had the edge in time spent at Eaton and experience on the machinery, Moore had substantially greater written communication skills and a more pertinent educational background. When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, "it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." Colon-Sanchez v. Marsh, 733 F.2d 78, 82 & n. 1 (10th Cir. 1984).

In Colon-Sanchez, the first candidate had greater administrative and supervisory skills while the second had greater mechanical skills. Since the job description at issue discussed significant administrative and supervisory responsibilities, we held that the

_____

discriminatory attitudes by the decisionmaker preceding the challenged decision. The Court held that such conduct was important evidence even though it was not made in the direct context of the challenged action. See id. at 152-53, 120 S. Ct. at 2111-12. However, Jones's allegations of racism at Eaton fall far short of proving pretext for reasons that are still valid after Reeves. For example, the incidents to which Jones refers were remote in time and they did not involve wrongdoing by anyone who participated in the promotion decision.

employer's decision to hire the first candidate based on his administrative background raised no question of pretext. See Colon-Sanchez, 733 F.2d at 82. Similarly, Eaton's decision to hire Moore based on his perceived superior education, interpersonal, and communication skills is not the kind of subjective decision that, by itself, suggests pretext. Our role is to prevent unlawful hiring practices, not to act as a "super personnel department" that second guesses employers' business judgments. Verniero v. Air Force Academy Sch. Dist. No. 20, 705 F.2d 388, 390 (10th Cir. 1993). Jones simply has provided no evidence that he was so clearly better qualified than Moore that a jury could reasonably conclude that Eaton based its decision on something other than its proffered reasons.

Jones's conjecture that he was the best qualified applicant for the production supervisor position fails to create a genuine issue of material fact that Eaton's reason for failing to promote him is pretextual. The record clearly shows that the interviewers were not impressed with Jones's communication abilities which they deemed essential to the position of production supervisor and which the company had delineated as imperative for a production supervisor in the job description. Jones's opinion and conclusory allegations that he was the better candidate for the job merely attempt to substitute his judgment for that of the employer's. See L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact.").

Jones's further assertion that he never received any complaints regarding his ability to communicate effectively also does not show that Eaton's reasons for failing to promote him are unworthy of belief. As noted, Haefner thought that Jones might succeed in a second shift supervisor position, where less communication with customers and upper management was involved, thus supporting Eaton's position that Jones's communication skills were not sufficient for a first shift production supervisor position. As such, Jones's evidence casts no doubt on Eaton's reason and merely questions the wisdom of the promotion decision. We consistently recognize, however, courts "are not in the position of determining whether a business decision was good or bad. Title VII [and Section 1981 are] not violated by the exercise of erroneous or even illogical business judgment." Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir. 1993) (citations omitted); see also Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) ("[M]ere conjecture that [the] employer's explanation is a pretext . . . is an insufficient basis for denial of summary judgment.").

## III. CONCLUSION

Considering Jones's circumstantial evidence in its totality, as we must, he has provided insufficient evidence for a reasonable jury to conclude that Eaton's proffered reason for not promoting him–that Moore was better qualified–was unworthy of belief.

Consequently, Jones has failed to meet his burden of production and the district court appropriately granted summary judgment in favor of Eaton. **AFFIRMED.**


Entered for the Court


Tom Stagg
District Judge